THE HOME INSURANCE COMPANY OF NEW YORK, A CORPORATION (PLAINTIFF) APPELLANT, v. MARVIN E. SMITH (DEFENDANT) RESPONDENT.—140 S. W. (2d) 64.

St. Louis Court of Appeals. Opinion filed May 7, 1940.

*R. E. Kleinschmidt, Taylor, Chasnoff & Willson,* and *J. H. Cunningham, Jr.,* for appellant, The Home Insurance Company of New York.

554

*Terry, Terry & Terry* for (defendant) respondent.

BENNICK, C.—This is an action by plaintiff, The Home Insurance Company of New York, to recover back from defendant, Marvin E. Smith, the sum of $85.88 paid defendant by plaintiff under a policy of insurance issued by plaintiff to defendant, insuring him against all damages by collision to his certain automobile in excess of $50. The ground relied upon for the recovery back of the money thus paid by plaintiff is the defendant's subsequent act in effecting full and complete settlement with the third party tort-feasor, so as to

have defeated and destroyed plaintiff's alleged right of subrogation under an agreement theretofore executed between it and defendant, whereby defendant, in consideration of and to the extent of the payment made to him by plaintiff, purported to subrogate plaintiff to all the rights, claims, and interests which he might have against said third party tort-feasor arising out of the collision.

The case originated in a justice's court upon the filing of plaintiff's statement, to which defendant answered by a general denial, coupled with a counterclaim for damages allegedly sustained by him in being called upon to defend the action.

Taken on appeal to the circuit court, the case was tried and submitted to the court alone upon an agreed statement of facts, resulting in a finding in favor of defendant on plaintiff's cause of action, and in favor of plaintiff on defendant's counterclaim. Judgment was entered accordingly, from which plaintiff's appeal to this court has followed in the usual course.

The collision between the automobiles of defendant and the third party tort-feasor occurred while the policy was in full force and effect, and resulted in damages to defendant's automobile in the total amount of $135.88, for which plaintiff was liable under its policy to the extent of $85.88, representing the portion of the loss in excess of $50.

Thereafter defendant made a report of the accident to plaintiff, which indicated that the damages to his automobile had been suffered through the sole fault of the third party tort-feasor in the management and operation of the latter's automobile.

The policy of insurance which had been issued to defendant contained the following clause: "Subrogation. This company may require from the assured an assignment of all right of recovery against any party for loss or damage to the extent that payment therefor is made by this company."

Shortly following the report of the accident, but prior to plaintiff's actual discharge of its liability to defendant by the payment of the sum of $85.88, defendant, at plaintiff's request, executed a subrogation receipt, reciting that "in consideration of and to the extent of said payment the undersigned hereby subrogates said insurance company to all of the rights, claims, and interest which the undersigned may have against any person or corporation liable for the loss mentioned above," and warranting that no settlement had been made with or release given to any person responsible for the loss, and "that no such settlement will be made nor release given by the undersigned without the written consent of the said insurance company."

Later, at plaintiff's request, defendant signed a loss and damage agreement, the "sole purpose" of which was "to fix and evidence the total amount for which claim is made," and which concluded with a reiteration of the fact that "upon, in the event, and in con-

sideration of the payment of the above amount by The Home Insurance Co., the undersigned hereby subrogates the said company to all rights and causes of action that said undersigned has against any person, persons, or company whomsoever for damages arising to said automobile.''

Following defendant's execution of both the subrogation receipt and the loss and damage agreement in accordance with the subrogation provision of the policy, plaintiff discharged its liability to defendant by payment of the sum of $85.88, which, as we have indicated above, represented the amount of the loss in excess of $50.

Thereafter defendant, without plaintiff's knowledge or consent, executed a release to the third party tort-feasor, acknowledging receipt of the sum of $50 paid to him by such third party tort-feasor, which sum was ''to cover all damages, both to property and personal injury and all liability'' arising out of the collision which had occurred between the two automobiles, and which had resulted in specifically stated damage to the automobile, with ''no injury sustained.'' In the concluding portion of the release it was again recited that ''the above-mentioned $50 (fifty dollars) covers all damages.''

Apprised of the settlement thus made by defendant with the third party tort-feasor by virtue of which its alleged subrogation rights had been defeated and destroyed, plaintiff brought this action, seeking to recover from defendant the damages amounting to $85.88, which it claims to have suffered as the result of defendant's violation of his agreement with plaintiff not to make settlement of his claim or execute a release to the third party tort-feasor without plaintiff's consent.

The sole point at issue on this appeal is whether the court erred in denying plaintiff a recovery upon its cause of action under the agreed statement of facts upon which the case was tried.

While as a principle of equity, an insurer, upon payment of the loss, acquires the legal right to be subrogated *pro tanto* to the insured's right of action against the person responsible for the loss (Swift & Co. v. Wabash R. Co., 149 Mo. App. 526, 131 S. W. 124), plaintiff counts in this case upon conventional subrogation in the nature of an assignment, based upon the subrogation clause of the policy, and evidenced by both the subrogation receipt and the subsequently executed loss and damage agreement. The right thus given by the policy was one of the conditions upon which plaintiff assumed the risk insured against; and inasmuch as its subrogation was limited to the extent that payment was made by it for a loss sustained by defendant within the coverage of the policy, the contractual obligation entered into between it and defendant was valid and enforceable. [Mosby v. Aetna Insurance Co., 285 Mo. 242, 225 S. W. 715; Dick v. Franklin Fire Insurance Co., 10 Mo. App. 376, 386.]

With the validity of such subrogation provisions upheld and recognized, it would seem logically to follow that when the insured, after receiving payment from the insurer, and after executing a receipt or agreement subrogating the insurer to his own rights against the third party tort-feasor to the extent of the payment made, thereafter, without the insurer's knowledge or consent, settles with and releases the third party tort-feasor so as to defeat and destroy the insurer's right of subrogation, he violates his agreement with the insurer which had constituted a part of the consideration for the issuance of the policy, and may be compelled to return to the insurer the money received from the latter in the discharge of its liability under the policy. [Illinois Automobile Insurance Exchange v. Braun, 280 Pa. 550, 124 Atl. 691; Phoenix Insurance Co. v. Parsons, 129 N. Y. 86, 29 N. E. 87; Norwich Union Fire Insurance Society v. Stang, 18 Ohio C. C. 464, 9 Ohio C. D. 576; Commercial Casualty Insurance Co. v. Leebron, 90 Pa. Sup. Ct. 201.]

Of course, if the insured settles with or receives satisfaction from the third party tort-feasor only for that amount of his loss over and above the amount of the payment by the insurer, and makes no settlement of, and receives no satisfaction for, the proportion of the total claim to which the insurer, by reason of payment, was entitled to subrogation, then the insurer's rights are not affected with the third party tort-feasor thus in effect consenting to the splitting of the cause of action against him, and there may be no recovery back of the payment made by the insurer to the insured. In such a case, where the aggregate of both sums recovered amounts only to payment of the loss in full, there is no double recovery by the insured for the one loss he has sustained, and therefore no violation of the principle upon which the doctrine of subrogation rests. [Hamilton Fire Insurance Co. v. Gregor, 246 N. Y. 162, 158 N. E. 60; Sun Insurance Co. v. Hohenstein, 220 N. Y. S. 386, 128 Misc. 870.]

Now it is true that in the case at bar there was no double recovery by defendant, since the sum of $50 received from the third party tort-feasor constituted only the excess of defendant's total loss over and above the amount paid him by plaintiff in the discharge of its liability under the policy; and if the settlement with the third party tort-feasor had been distinctly limited to such excess or proportion of the entire claim, plaintiff's right of subrogation would in no sense have been violated, and there could be no basis for the maintenance of the present action. The trouble is, however, that while the consideration for the settlement was actually only the amount of the excess over and above that paid by plaintiff, the release was nevertheless made to cover all the damages sustained by defendant on account of the collision, so as to have barred and defeated any subsequent action or claim against the third party tort-feasor whereby plaintiff's right of subrogation might have been secured and rendered effectual. Moreover, whatever the actual fact may have been, there

was no showing or contention made that the third party tort-feasor, in effecting his settlement with defendant, was aware of plaintiff's interest in or connection with the case, or that he accepted the release in full from defendant, knowing of plaintiff's right to be subrogated, to the extent of its payment to defendant, of the latter's rights against him.

Conceding that the release executed to the third party tort-feasor may have represented no more than the compromise of a disputed liability and is not to be taken as an admission of liability on the part of the third party tort-feasor, defendant, and not plaintiff, is alone to blame for any discharged of the third party tort-feasor upon payment of less than the full amount of the damages which his negligence may have occasioned, and it is therefore of no avail to defendant to suggest that the amount realized from the third party tort-feasor compensated him only for the excess of his loss over and above the portion of it paid by plaintiff. [Illinois Automobile Insurance Exchange v. Braun, *supra*.] Furthermore, if it was incumbent upon plaintiff to prove, as an element of the cause of action asserted, that it might have recovered against the third party as a tort-feasor (Hamilton Fire Insurance Company v. Greger, *supra*), it is enough to point out that the only showing made regarding the responsibility for the collision was contained in defendant's own report of the accident, which purported to disclose that the same was wholly the fault of the third party tort-feasor with whose automobile that of defendant had collided.

There is something said in the briefs to the effect that in the absence of a charge of fraud or mistake, the settlement made by defendant with the third party tort-feasor may not be attacked or set aside. The answer is that plaintiff is not attacking nor attempting to set aside such settlement, but on account of the bar it affords to the enforcement of its right of subrogation against the party primarily liable for the damages, is seeking to recover back from defendant the sum which it paid defendant in the discharge of its liability under the policy.

It follows that the judgment rendered, insofar as against plaintiff on its cause of action, should be reversed and the cause remanded, with directions to the circuit court to enter up a new judgment which shall be in plaintiff's favor on its cause of action for the sum of $85.88, with costs, said judgment to be entered as of, and to bear interest from, the date of the original judgment. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, reversed and the cause remanded in accordance with the recommendations of the Commissioner. *Hughes, P. J.,* and *Becker,* and *McCullen, JJ.,* concur.