**FARM BUREAU MUTUAL INSURANCE COMPANY of Missouri, a Missouri Corporation (Plaintiff) Respondent,**

v.

**Albert ANDERSON (Defendant) Appellant.**

No. 30725.

St. Louis Court of Appeals.

Missouri.

Sept. 18, 1962.

Motion for Rehearing or to Transfer to Supreme Court Denied Oct. 15, 1962.

 

Donald V. McKee and Allen H. Surinsky, Clayton, for appellant.

Charles N. Goodman, Clayton, for respondent.

GEORGE P. ADAMS, Special Judge.

Plaintiff-respondent-insurer paid defendant-appellant-insured $650.00 under its policy for property damage to defendant's car and took an assignment from defendant pursuant to subrogation provisions in the policy. Defendant settled with and gave releases to a third party tort-feasor. Plaintiff, claiming that defendant had thereby precluded it from asserting its subrogation and assignment rights, brought suit to recover its net payment to defendant, $520.00. Following a directed verdict in favor of plaintiff for said sum of $520.00, defendant appeals.

Prior to September 20, 1954, plaintiff issued its policy in favor of defendant, which included a $50.00 deductible automobile collision agreement. The policy also contained a subrogation agreement providing that in the event of payment under the policy, the plaintiff "shall be subrogated to all the insured's rights of recovery therefor against any person or organization" and that " * * * insured shall do nothing after loss to prejudice such rights."

On September 20, 1954, and while the policy was in force, defendant's car was damaged and he and his wife received personal injuries in a collision with one Gilbert Cattoor. In an "Automobile Accident Notice," defendant reported details of the accident, as follows:

"We were going west on Highway 50 at about 40 when I saw the car coming from the west. When I saw the other car, I could see he was coming fast and was weaving. I immediately started to slow down and pull to the right. Other car swerved right at us and at time of collision I was partly off on the shoulder and I was either stopped or almost stopped."

Plaintiff and defendant agreed that the value of defendant's demolished car was $700.00, and on December 16, 1954, plaintiff paid defendant $650.00 and took title to the car, which was later sold as "salvage" for $130.00. At that time, defendant executed a "release and authorization to pay for damages, repairs, replacements and loss", which also contained a subrogation agreement providing:

"It is agreed by the Insured that upon payment of the foregoing claim, Farm Bureau Mutual Insurance Company of Missouri is hereby subrogated to all claims and rights of action of the undersigned against any third person or persons, firm, corporation or estate to the amount so paid, and the undersigned assigns and sets over to the said corporation all such claims with the right to prosecute the said action or actions in the name of the assignor."

On May 16, 1955, defendant and his wife settled with Cattoor and his insurance carrier and defendant executed two releases—one for himself alone for $6,000.00, agreeing to release, acquit, and forever discharge Cattoor "of and from any and all actions, causes of action, claims, both direct and consequential actions, demands, damages, costs, loss of service, expenses and compensation, which I now have, or may hereafter have, on account of, or arising out of any matter or thing which has happened, developed, or occurred, before the signing of this release, and particularly" because of the accident on September 20, 1954—and another for $7,000.00 paid to his wife and an additional $2,000.00 paid to defendant, wherein they agreed to remise, release and forever discharge Cattoor "from any and all such claims, demands, damages, costs, expenses, loss of services, actions and causes of actions arising from any act or occurrence from the beginning of the world up to the present time, and particularly on account of all personal injury, disability, property damage, loss of services and loss or damages of any kind" sustained in consequence of the accident of September 20, 1954.

On March 13, 1957, plaintiff filed its petition alleging that the $6,000.00 release was given without plaintiff's knowledge or consent and it barred plaintiff's right of action under the subrogation agreement executed by defendant; also, that said release to the third party tort-feasor breached the subrogation agreement of the policy and the subrogation agreement executed after the loss, in that defendant thereby precluded plaintiff's right of recovery.

In addition to a general denial, defendant's answer alleged that on or about December 16, 1954, one Warren Brown, "an agent, servant and employee of the plaintiff" advised defendant "that it was alright to settle with Gilbert F. Cattoor and Gilbert F. Cattoor's insurance company", and that plaintiff should be estopped to deny that it was all right for defendant to settle with Cattoor.

Warren D. Brown, who testified that at the time of loss he was a claim adjuster for plaintiff and at the time of the trial (May 9, 1960) he was in charge of plaintiff's Clayton office as District Claims Supervisor, had been served with a subpoena duces tecum to produce three communications between Brown and Paul E. Decker, a lawyer employed by plaintiff. Two of the communications, Defendant's Exhibits "A" and "B", are identified by the trial judge in connection with a ruling as "a couple of communications between people in the Farm Bureau Insurance Company's adjustment setup." The third "communication", Defendant's Exhibit "C" reads as follows:

"Interoffice—Farm Bureau Mutual Insurance Company of Missouri, Jefferson City, Missouri—Memo to Paul E. Decker, from Warren D. Brown. Subject HOA 64686, Albert Anderson, St. Louis County, D/A 9–20–54. Date November 23, 1955. As per your request in memo of November 4, I have called on Mr. and Mrs. Anderson and they claim they did not collect for

damage to their vehicle when settlement was made with Mr. Ebert who was the attorney that handled the claim for No. 3's insurance company. No. 3 was insured with Farmers Mutual of Madison, Wisconsin and the claim was assigned to Mr. Ebert by their Kansas City office. Since talking to Mr. and Mrs. Anderson, I have again contacted Mr. Ebert and he has informed me that he has information in his file which clearly shows that in settlement with Mr. and Mrs. Anderson under the special damages claim by Anderson, $1,500.00 was allowed in payment to Anderson as the actual value of his car, which was demolished in this accident. He also states that both McKee and Anderson made it plain to him that he did not have collision on his car and no payment had been made to him in regard to settlement under collision coverage by any insurance company. I suggest you write Mr. Anderson a rather stern letter pointing out to him that we are looking to him for payment on money we paid out in regard to settlement under his collision coverage. I see no reason why we should lose the money we paid out in good faith under the coverage we afforded Mr. Anderson on this policy although I realize we are in a rather embarrassing position by not putting No. 3's insurance company on notice of our subrogation rights. At the time this accident happened, I was on my own and did not have an accurate file system as we have now. It was quite easy for a claim to get set aside and we failed to see that all necessary letters protecting our interests were written. This happened to be one of those claims that passed by. However, both Ebert and McKee, attorney for Anderson, had been notified of our subrogation claim verbally. In fact, McKee had offered to collect our subrogation claim for us. I will await a reply from you before taking any other action on this claim. W. D. B."

On objection of plaintiff on the ground that the "communications" were privileged, the court refused to admit Exhibit "C" into evidence and sustained a motion to quash all three exhibits, "A", "B" and "C".

At the trial, in answer to the question, "How did this collision occur, please?", defendant said: "Well, he turned out to pass another car and started to skidding, and I seen him coming so I started pulling over and slowed up." He testified further that the pavement was wet. On cross-examination, defendant testified that Cattoor came over to defendant's side of the road and hit him head-on approximately, and that at that time defendant was completely off the road on the shoulder; also, that "there wasn't any question about whose fault."

During the course of defendant's testimony, he offered to prove that on December 16, 1954, Brown, "Agent and Superintendent" for plaintiff, told defendant that it was all right to settle with Gilbert Cattoor and Cattoor's insurance company; that Brown and plaintiff "had no further interest in defendant's claim and that it would be perfectly all right to go ahead and settle with them" and that in reliance upon the representations of Brown, defendant did settle with Cattoor and his insurance Company. An objection was sustained to the offer.

Cattoor testified he didn't remember whether his car skidded or not; that he didn't remember the details of the accident; that he was unconscious for five days.

Defendant offered a deposition of a Donald V. McKee, an attorney who represented him in the settlement with Cattoor. An objection by plaintiff that the deposition "is the most self-serving thing that—" and that it "is secondary evidence and it wouldn't be admissible as he would only be able to talk as agent for Mr. Anderson who is in the courtroom" was sustained after the court commented that it couldn't see "how

the deposition of the man's own attorney would be admissible in his behalf \* \* \*."

In the deposition, McKee identified himself as defendant's attorney in his claim against Cattoor and testified that he dealt with Robert Ebert, a representative of Cattoor's insurance company; that he "represented his claims for personal injuries to himself and his wife, for various losses directly resulting from the accident, both as to crops, for domestic help hired, losses to cattle on his farm which he was operating; in fact, every claim Mr. Anderson had, with the exception of a claim for loss which was sustained by reason of loss of his automobile"; that he advised Mr. Ebert that Mr. Anderson had collision insurance; that he had effected a settlement of his claim; that Ebert would have to look to Farm Bureau, or expect a claim from Farm Bureau for the amounts they paid under their collision policy; that Ebert was told that Anderson had collision insurance and that he was not representing the collision carrier; that this "notice" that Anderson had settled his "deductible" claim with Farm Bureau was given Ebert prior to the settlement with Ebert.

On motion of plaintiff, the Court directed a verdict for plaintiff for $520.00.

■ Defendant's first contention is that it was necessary for plaintiff to have shown that Cattoor was negligent before it could claim damage in being deprived of its right to pursue its subrogation assignment against Cattoor, and that it did not do so.

In Home Ins. Co. of New York v. Smith, 235 Mo.App. 552, 140 S.W.2d 64, the defendant-insured made a report of the accident to plaintiff-insurer which "indicated that the damages to his automobile had been suffered through the sole fault of the third party tort-feasor \* \* \*." In passing on a contention similar to the one made by defendant here, the court said, at page 68 of 140 S.W.2d:

"\* \* \* Furthermore, if it was incumbent upon plaintiff to prove, as an element of the cause of action asserted, that it might have recovered against the third party as a tort-feasor (Hamilton Fire Insurance Company v. Greger, supra), it is enough to point out that the only showing made regarding the responsibility for the collision was contained in defendant's own report of the accident, which purported to disclose that the same was wholly the fault of the third party tort-feasor with whose automobile that of defendant had collided." [Hamilton Fire Insurance Company v. Greger, 246 N.Y. 162, 158 N.E. 60, 55 A.L.R. 921.]

The automobile accident notice which was furnished plaintiff by defendant here purports "to disclose that the same was wholly the fault of the third party tortfeasor." It disclosed that defendant was struck by Cattoor's car when defendant was partly off on the shoulder on defendant's side of the highway (in his testimony at the trial, defendant said he was "completely off" on the shoulder). We think this justifies the conclusion that, at least according to defendant's version, Cattoor was at fault.

■ In support of his position that the jury should have passed on Cattoor's negligence, defendant relies solely on his own testimony at the trial that the pavement was wet and that Cattoor's car started to skid. After collecting $15,000.00 in damages for his wife and himself, based upon the negligence of Cattoor, defendant's claim now that the accident was not the fault of Cattoor is incredulous.

Considering defendant's original report of the accident, his testimony that he was completely off on the shoulder when struck by Cattoor (and his conclusion, by which he should be bound, that there was no question about whose fault caused the accident) and the substantial settlement paid his wife and him, we feel that there was no issue for the jury in this respect.

■ Defendant next complains that the court erred in quashing the subpoena duces

tecum calling for the production of the communication between Decker and Brown, Defendant's Exhibit "C". Inasmuch as this paper was actually produced and marked as an exhibit, the court's ruling quashing the subpoena was ineffective and if erroneous, was harmless. However, the court did exclude this exhibit and an offer of proof was made by reading it into the record. We feel that defendant's assignment of error and argument in support of the assignment is sufficient to preserve his right to have the Court's action reviewed.

■ This "inter-office memo" or communication was privileged and the trial court did not err in sustaining plaintiff's objection to its introduction (or production) on that ground.

The communication did not relate "to a subject matter under investigation in the ordinary course of" plaintiff's business and was not "written almost immediately after the occurrence" as was the case in Curtis v. Indemnity Co. of America, 327 Mo. 350, 37 S.W.2d 616, cited by defendant. On the contrary, it was written on November 23, 1955, one year, two months and three days after the loss and eleven months and seven days after plaintiff had settled with defendant. It was in fact made in "anticipation of litigation" (Civil Rules 57.01(b), 58.01 and 56.01, V.A.M.R.) and was with reference to litigation "contemplated" and was privileged. State ex rel. Terminal R. Ass'n of St. Louis v. Flynn, 363 Mo. 1065, 257 S.W.2d 69, l. c. 73(7). It dealt with the subject of collecting plaintiff's subrogation payment from defendant, with Brown's call upon defendant, and his refusal to repay (and his reasons). In it, Brown recommended to plaintiff's attorney that a "stern letter" be written defendant pointing out that plaintiff was looking "to him for payment" of the money it had paid out. Brown's comment that he saw no reason why plaintiff "should lose the money we paid out in good faith" indicates a frame of mind contemplating enforcement of the claim by litigation, if necessary. Finally, on March 13, 1957, the "anticipated" litigation became a reality with the filing of this suit relating to the identical subject matter of the memo.

■■ Defendant next complains of error in the exclusion of McKee's deposition. Those portions of it relating to the extent that McKee represented defendant in negotiating the settlement with Cattoor and that the release "did not include damage to Anderson's automobile" were conclusions and inadmissible. However, in the deposition McKee testified that he advised the agent of Cattoor's insurance carrier that defendant had collision insurance and that plaintiff had paid defendant. These were statements of fact and not conclusions of the witness. That it was testimony of defendant's attorney and the fact that defendant was in the courtroom did not render it incompetent. Whether Cattoor and his carrier had notice of plaintiff's collision payment to defendant and thus of plaintiff's subrogation rights is material to the issues of the case; in fact, it is of decisive importance.

If Cattoor and his carrier had notice or knowledge of plaintiff's payment to defendant, they knew that plaintiff " 'occupied the position of subrogee and * * * had acquired a right of action against it (Cattoor) which was not controlled by the insured and which the latter had no right to cancel. The insurer was in no way a party to the settlement (between defendant and Cattoor), and we think that the latter was made subject to its (plaintiff's) rights and without destruction thereof.' " Having such knowledge " 'the primary wrongdoer cannot make with the insured a settlement which will deprive of its known rights the insurer, who was not a party to the settlement, and has made its payments before the settlement.' " General Exchange Ins. Corporation v. Young, Mo.App., 206 S.W.2d 683, 689(5), quoting with approval from Ocean Accident & Guarantee Corporation v. Hooker Electro-Chemical Co., 240 N.Y. 37, 147 N.E. 351, 354; General Exchange Ins. Corporation v. Young, 357 Mo. 1099, 212 S.W.2d 396, affirming this court's opinion, in 206 S.W.2d, supra, saying, at page 397,

that "all of appellant's assignments of error are there fully discussed and we think correctly decided."

■ Therefore, if a third party tort-feasor, with knowledge of an insurer's right of action as subrogee, and without the consent of the insurer, settles with the insured, the insurer's right to proceed against such tort-feasor is not affected. In such case, the primary wrongdoer, and not the insured, should repay the insurer. Hamilton Fire Insurance Company v. Greger, 246 N.Y. 162, 158 N.E. 60, 55 A.L.R. 921, 925.

On the other hand, if the third party tort-feasor has no knowledge of the insurer's payment to the insured and of its subrogation rights, and if the release purports to cover all damages sustained by insured on account of the collision (as did both releases given Cattoor and his carrier) and is not limited to damages not included in an earlier payment, then the subrogee's right of action against the third party tort-feasor has been effectively barred and defeated and the insured should repay insurer the amount of its collision payment. Home Ins. Co. of New York v. Smith, 235 Mo.App. 552, 140 S.W.2d 64, 67(5).

Defendant also contends that his settlement with Cattoor did not include damages to his car.

If it had been the intention of defendant and Cattoor not to include damages to defendant's car in the settlement, defendant could have seen that the release was expressly limited to damages other than those to his car and plaintiff's right of subrogation would not have been affected. However, having given a release purporting to cover all damages "defendant, and not plaintiff, is alone to blame for any discharge of the third party tort-feasor upon payment of less than the full amount of the damages which his negligence may have occasioned, and it is therefore of no avail to defendant to suggest that the amount realized from the third party tort-feasor compensated him only for the excess of his loss over and above the portion of it paid by plaintiff." Home Ins. Co. of New York v. Smith, 235 Mo.App. 552, 140 S.W.2d 64, 67-68(5).

As was said in Illinois Automobile Insurance Exchange v. Braun et al., 280 Pa. 550, 124 A. 691, l. c. 692, 36 A.L.R. 1262, 1265, defendant "could not be permitted to jeopard appellee's (plaintiff's) position by mixing up the claims and making a lump settlement and then set up this as a reason against appellee's recovery from them."

It was within defendant's power at any time prior to settlement to notify Cattoor and his carrier of plaintiff's payment to him or to have limited the releases to damages in excess of, or in addition to, those to his automobile. He did not do the latter, and if he did not do the former he should repay plaintiff.

Plaintiff attempts to support the exclusion of McKee's deposition by asserting that a "foundation" for its admission was not laid. It would be sufficient to say that no objection on that ground was made at the trial and it is too late to urge it for the first time now. However, one of the "facts which would authorize the reading of the deposition" is that by reason of "sickness * * * he (deponent) is unable to or cannot safely attend court." Civil Rule 57.-29(b) (3).

At the time the deposition was offered, the court inquired as to whose attorney McKee was, and counsel for plaintiff stated: "Anderson, on his claim against Cattoor and shortly before this was set for trial, I believe last October, they took a fast deposition of McKee and *he has since become ill.*" In addition to failing to object that no ground was laid, plaintiff's counsel's own statement indicated that one of the grounds authorizing its use in fact existed.

In denying defendant the right to attempt to show that Cattoor and his carrier had notice of plaintiff's payment to defendant, the trial judge stated: "The Court doesn't think it makes any difference whether they have notice or not." In an effort to support

the theory of the trial court and the exclusion of McKee's deposition relating to notice to Cattoor and his carrier, plaintiff cites Subscribers at Casualty Reciprocal Exchange, by Dodson et al. v. Kansas City Public Service Co., 230 Mo.App. 468, 91 S.W.2d 227. In General Exchange Ins. Corporation v. Young, 206 S.W.2d 683, 691, we ordered the cause transferred to the Supreme Court because our opinion was in conflict with the Casualty Reciprocal Exchange case. In its opinion, 212 S.W.2d 396, 1. c. 399 and 401, the Supreme Court disapproved the holding in the Casualty Reciprocal Exchange case and it is no longer to be followed.

 Defendant's final contention is that he should have been permitted to have proved "that defendant inquired of Warren Brown if it was alright to settle with Cattoor and Warren Brown advised that it was alright for defendant to settle with Cattoor." Specifically, defendant offered to prove by Brown that on December 16, 1954, Brown told defendant that it was all right to settle with Cattoor and that plaintiff had no further interest in "defendant's claim." The theory upon which defendant made the offer was under his plea of "estoppel."

The only testimony relative to the position which Brown held with plaintiff on December 16, 1954, was that of Brown he was a "claim adjuster". Therefore, without a showing of a greater authority, an adjustor's authority is limited "to the ascertainment and adjustment of the loss; and he has no power merely as such, in the absence of some evidence as to his authority, to alter the contract, or waive any of its essential conditions;" 45 C.J.S. Insurance § 1102, page 1339; Booker v. Motors Ins. Corporation, Mo.App., 228 S.W.2d 694, 696(1). Whatever Brown may have said he could not alter or waive any of the essential conditions of the insurance policy or the subrogation assignment.

Upon the record made, the trial court properly sustained plaintiff's objection to this testimony.

Because of the error in refusing to admit the deposition of Donald V. McKee into evidence, the judgment is reversed and cause remanded for a new trial.

ANDERSON, P. J., and WOLFE, J., concur.

RUDDY, J., not participating.