**Paul and Majorie HOWARTH, Appellants,**

v.

**DRUGGISTS MUTUAL INSURANCE COMPANY, Appellee.**

No. 72-1525.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1973.

Decided July 25, 1973.

---

Jo B. Gardner, Monett, Mo., for appellants.

Paul H. Niewald, Kansas City, Mo., for appellee.

Before MATTHES, Chief Judge, BRIGHT, Circuit Judge, and SMITH,* District Judge.

PER CURIAM.

Paul and Marjorie Howarth, appellants, sustained damages to their home and business property (Rexall Drug Store) as a result of a freight train explosion on the Kansas City Southern Railway at Noel, Missouri, on August 3, 1969. They brought an action in federal district court grounded on diversity of citizenship against Druggists Mutual Insurance Company, appellee, to recover these damages under a fire insurance policy affording coverage for loss by explosion, and requiring payment for damage to the dwelling and contents of the policyholders' home, and for damage to the structure and contents of the drug store, as well as coverage for loss of profits from the interruption of the business.

In response to special interrogatories, a jury determined that the Howarths sustained loss to their residence and the contents thereof in the sum of $11,000, and sustained a loss with respect to their business property, including loss of profits, totalling $17,300. The jury found further that the insurer was guilty of vexatious delay in refusing to pay the claims of the policyholders under the insurance policy and it assessed additional damages for delay at ten percent of the jury award, plus reasonable attor-

* Eastern District of Michigan, sitting by designation.

ney's fees. *See* Mo.Rev.Stat. § 375.420, V.A.M.S. (1968). Post-verdict, the district court on motion of the defendant entered a judgment of dismissal n. o. v., holding that an earlier suit and recovery for the same losses by Mr. and Mrs. Howarth against the Kansas City Southern Railway barred them from recovering against the appellee-insurer. We affirm the judgment of dismissal.

The record shows without dispute that, following the explosion, insurance companies which had issued policies covering property in the Noel, Missouri, area, sent adjusters into the community to process and adjust claims arising from the explosion. The adjuster representing Druggists Mutual indicated a willingness to settle appellants' claims for damage to their property under the policy, and made an offer on the loss to the drug store. The company insisted that the insureds sign a loan receipt as a condition of payment. The insureds, with advice of counsel, declined to sign the loan receipt and elected to proceed with a lawsuit in their own name against the railroad.

The loan receipt tendered to the insureds stipulated that they would acknowledge the funds received from the insurer as a loan to be repaid "only in the event and to the extent of any net recovery" the insureds might receive from any third person responsible for the insureds' damages. The loan receipt did not involve any financial undertaking on the part of the insureds, but obligated them to cooperate with the insurer to collect their claim against any third party ultimately liable for the loss. The testimony establishes that under a loan receipt, unlike a subrogation receipt, the insurer might press an action to recover the loss from a negligent tort-feasor in the name of the insured rather than in the name of the insurer. *See* Annot., 13 A.L.R.3d 42 (1967).

■ The record clearly indicates that the appellants elected to proceed against the railroad, rather than settling their loss with their own insurer.

By prosecuting the lawsuit in state court against the railroad, obtaining a judgment against it, and thereafter collecting that judgment, the insureds thereby accepted satisfaction of their claims for loss to the buildings and their contents, and for loss of profits. This action released the tort-feasor, and at the same time destroyed any possibility of Druggists Mutual obtaining a right of recovery by subrogation against the negligent tort-feasor, should this insurer be called upon to pay the loss to the insureds. In Missouri, the cases clearly state that the release of the tort-feasor and the destruction of the subrogation rights of the insurer operate as a complete defense to a subsequent action on the policy brought by the insured against the insurer. Hubbard v. United States Fidelity & Guaranty Co., 430 S.W.2d 607, 610–611 (Mo.Ct.App.1968); Richardson v. Employers Mutual Liability Ins. Co. of Wis., 269 S.W.2d 132, 135 (Mo.Ct.App.1954); Knight v. Calvert Fire Ins. Co., 268 S.W.2d 53, 55 (Mo.Ct. App.1954). *See* Farm Bureau Mutual Ins. Co. v. Anderson, 360 S.W.2d 314, 320 (Mo.Ct.App.1962).

■ Appellants vigorously assert that an unfavorable judgment on the merits ought not to affect the recovery against the insurer for vexatious damages. We reviewed the test to be applied in establishing a vexatious refusal to pay, under Missouri law, in United States v. F. D. Rich Co., Inc., 439 F.2d 895 (8th Cir. 1971):

> In order for a plaintiff to recover for vexatious refusal to pay, he must produce evidence which shows that the refusal was wilful and persistent and without reasonable cause as the facts would appear to a reasonable and prudent person before trial. *Id.* at 905.

The record shows that the insureds wrote the carrier on October 5, 1969, complaining of the delay by the independent adjusters (General Adjustment Bureau) in concluding settlements. The insurer promptly responded indicating its willingness to cooperate even to the

 

extent of making advance payments to contractors and advising:

> Also, we need from you subrogation rights which will protect our interests as concerns our hopes of making some sort of recovery from whoever might be judged responsible for the explosion. No payment of any kind can be made to you without a proper loan receipt of [sic] subrogation receipt.

The company further advised that "* * * we are again writing to the adjuster and he should be in touch with you shortly although they undoubtedly are extremely busy with the numerous claims that have arisen from this unfortunate occurrence."

Upon receipt of this letter, appellants hired counsel who, on December 8, 1969, by amendment of a complaint, added plaintiffs' claim to others in the suit then pending against the railroad.

■ Assuming, arguendo, that the insurer had no contractual right to demand the insureds sign a loan receipt in order to protect its subrogation interest, we find no evidence to show such request to be vexatious or prejudicial to an insured. Counsel for appellants argues, however, that the insureds were entitled to their own counsel. Yet upon paying an insured's loss, the insurer's right of subrogation entitled it to control any litigation in enforcing an insured's claim against third parties. Nothing suggests that the insurer would not have cooperated with the appellants to enforce claims for their loss against the railroad for any damages not covered by the insurance. The parties, however, concede that the policies covered appellants' explosion losses in full, notwithstanding the fact that the insureds recovered a lesser amount from the railroad and from the jury in the present action.

In short, we find nothing in this record which affords justification for assessing damages for vexation against appellee.

No doubt the insureds were disappointed by the outcome of the litigation against the railroad. A measure of prudence would have dictated that the insureds present and collect their claims against their insurer rather than embarking upon an uncertain course of litigation. Mr. and Mrs. Howarth, upon the advice of their attorney, elected to proceed against the railroad to collect their losses. By taking these steps without the insurer's authorization, and by ultimately collecting the loss as determined in the prior litigation from the railroad, Mr. and Mrs. Howarth extinguished the claims for loss they might have collected against their own insurer.

Accordingly, the judgment of the district court is affirmed.