**ATLANTA CASUALTY COMPANY,**
Appellant,

v.

**Alan Jay HERSHBERGER, Respondent.**

**No. WD 45568.**

Missouri Court of Appeals,
Western District.

Feb. 16, 1993.

David R. Buchanan, John S. Rollins, Brown & James, P.C., Kansas City, for appellant Atlanta Cas. Co.

Richard T. Brewster, Jr., Brewster & Brewster, Kansas City, for respondent Hershberger.

Before BERREY, P.J., and ULRICH and SMART, JJ.

ULRICH, Judge.

Atlanta Casualty Company (Atlanta Casualty) appeals from the October 21, 1991, declaratory judgment which declared that Alan Jay Hershberger was insured by the company's insurance policy when he experienced an automobile-motorcycle collision on October 23, 1988. Atlanta Casualty claims the trial court erred in finding (1) that the "attempted cancellation" of the policy for nonpayment of premium was void because the full insurance premium had been paid to Atlanta Casualty, and (2) the "attempted cancellation" was void because it was not made in compliance with either section 364.130, RSMo 1986, or with the premium finance agreement. The order of the trial court is affirmed.

Seeking automobile liability insurance for his 1976 Buick Skylark, Alan Jay Hershberger met with agent William J. Medley at Missouri Farm Bureau Insurance Brokerage, Inc., (Farm Bureau) on July 23, 1988. During their discussions, Mr. Medley informed Mr. Hershberger that although he did not qualify for insurance with Farm Bureau, Mr. Hershberger could obtain six months of the legal minimum amount of liability insurance through Atlanta Casualty for an initial payment of $117.00.[1] Mr. Medley told Mr. Hershberger that the remainder of the $235.00 premium could be financed through Treaty House, Ltd., d/b/a "Mr. Budget" (Mr. Budget), a wholly-owned subsidiary of Atlanta Casualty.

Mr. Medley completed Mr. Hershberger's auto insurance policy application for coverage effective from July 23, 1988, through January 23, 1989. Additionally, Mr. Medley completed a premium finance agreement form which detailed Mr. Hershberger's financing arrangement with Mr. Budget. The agreement listed $142.00 as the amount of the premium financed and provided for a finance charge of $17.08. The agreement specified that repayment of the amount financed, $159.08, was to be made in four monthly installments of $39.77 each, with payments due August 23, September 23, October 23, and November 23, 1988. Also included in the agreement was a power of attorney provision giving Mr. Budget the right to request that Atlanta Casualty cancel the policy in the event Mr. Hershberger defaulted. Mr. Hershberger signed both the application and the premium finance agreement. Before Mr. Hershberger left the office, Mr. Medley gave him two copies of the premium finance agreement and four detachable coupons to use in making the monthly payments. Mr. Medley testified that when he received the actual policy from Atlanta Casualty, he forwarded it by mail to Mr. Hershberger, but Mr. Hershberger denied receiving it.

Atlanta Casualty received $142.00 from Mr. Budget on August 4, 1988. The $142.00 payment by Mr. Budget fully paid the balance due on Mr. Hershberger's policy with Atlanta Casualty for automobile liability insurance coverage from July 23, 1988, to January 23, 1989.

Mr. Hershberger did not make any of the monthly payments to Mr. Budget required by the premium finance agreement. The director of customer service and premium finance at Atlanta Casualty testified that

---

1. Mr. Medley testified that he told Mr. Hershberger that $93.00 of the initial fee represented a down payment for the insurance and $24.00 of the fee purchased his Missouri Farm Bureau membership. Although Mr. Hershberger signed the premium finance agreement specifying that he had made a down payment of only $93.00, Mr. Hershberger testified that Mr. Medley never informed him that $24.00 of his payment was to purchase a Farm Bureau membership and that

he never authorized Mr. Medley to use any portion of the money to obtain a Farm Bureau membership. The receipt completed by Mr. Medley for the $40.00 Mr. Hershberger paid toward the initial fee noted the payment was for "new business—auto" only. Two boxes on the form could have been checked to indicate that part of the money received was for a Farm Bureau membership.

Mr. Budget's standard practice for addressing delinquent payments was for Mr. Budget to issue, five days past the due date, a ten-day notice of intent to cancel the policy and to assess a late charge of five percent of the payment due. Mr. Medley acknowledged receiving a "Ten Day Notice of Intent to Cancel" dated August 29, 1988, which referred to Mr. Hershberger's policy and included a printed instruction to Mr. Medley as the "producer" to contact the insured for payment, but he admitted that he never contacted Mr. Hershberger. Mr. Hershberger denied ever having received the ten-day notice.

The director of customer service and premium finance also testified about the standard procedures for mailing cancellation notices, and Atlanta Casualty contends Mr. Budget mailed a Notice of Cancellation or Non–Renewal dated September 7, 1988, to Missouri Farm Bureau Brokerage, Inc. and to Mr. Hershberger at his last known address. The notice of cancellation shows a total needed to reinstate the policy of $44.77, which includes a cancellation fee of $3.02 in addition to the five-percent late fee ($1.98). The cancellation fee was charged to Mr. Hershberger's account on September 2, 1988, the fourth day of the ten-day period in which Mr. Hershberger could have reinstated his policy by paying only the five-percent late fee as provided in the intent to cancel notice. The notice of cancellation states non-payment of premium, specifically "non-payment to Mr. Budget," as the reason for cancellation and declares September 22, 1988, as the effective date of cancellation. Mr. Medley testified that he received notice of cancellation, but Mr. Hershberger claimed he never received notice. Mr. Hershberger testified that he did, however, receive a "Farm Bureau Membership Notice" dated September 27, 1988, requiring a $41.00 membership payment. Mr. Hershberger stated that he spoke to Mr. Medley by telephone in late September 1988 or early October 1988 and that in response to his question which payment (the Farm Bureau membership fee or the Mr. Budget installment payment) he was supposed to make, Mr. Medley told him to pay both of them. According to Mr. Hershberger, Mr. Medley never mentioned during their conversation that he received either the notice of intent to cancel or the notice of cancellation from Mr. Budget.

The director of customer service and premium finance at Atlanta Casualty testified that Mr. Hershberger's policy with Atlanta Casualty was canceled on September 22, 1988. Atlanta Casualty then returned the unearned portion of the premium to Mr. Budget on October 7, 1988.

On October 23, 1988, the automobile driven by Mr. Hershberger struck a motorcycle driven by Kenneth M. Howery. Mr. Hershberger immediately contacted Mr. Medley, who informed him that his insurance policy had been canceled September 22, 1988.

Mr. Howery filed suit against Mr. Hershberger on December 13, 1988, for the personal injuries and property damage he suffered as a result of the October 23, 1988, accident. Mr. Hershberger tendered the defense of the suit to Atlanta Casualty, which accepted the tender under a reservation of rights. Mr. Howery's lawsuit was dismissed without prejudice in February, 1991, when his uninsured motorist carrier agreed to pay him $10,000.

On June 7, 1989, Atlanta Casualty filed a declaratory judgment action seeking a declaration that coverage under Mr. Hershberger's policy was not available to either Mr. Hershberger or Mr. Howery and that Atlanta Casualty did not owe Mr. Hershberger a defense in the original lawsuit brought by Mr. Howery. Atlanta Casualty's petition alleged that cancellation of Mr. Hershberger's policy was proper "for reason of nonpayment of premium." Mr. Hershberger included the affirmative defense of full payment of the premium by August 4, 1988, in both his original and first amended versions of his answer and counterclaim.

The declaratory judgment action was tried to the circuit court on September 12, 1991. On October 21, 1991, the circuit court entered judgment in favor of Mr. Hershberger, declaring that the insurance policy remained in force and did cover Mr. Hershberger within the terms of the policy for the October 23, 1988, accident. The court further found that the total premium

for the policy period of July 23, 1988, through January 23, 1988, was $235.00 which was fully paid to Atlanta Casualty by August 4, 1988. The court stated that Atlanta Casualty's attempted cancellation of its policy with Mr. Hershberger was void because the full insurance premium had been paid and because the attempted cancellation failed to comply with either section 364.130, RSMo 1986, or the premium finance agreement itself. Atlanta Casualty appeals from the October 21, 1991, judgment.

### I.

Atlanta Casualty alleges as its first point on appeal that the trial court erred in finding that the attempted cancellation of its policy with Mr. Hershberger for nonpayment of premium was void because the full $235.00 premium had been paid to Atlanta Casualty. Atlanta Casualty argues that this finding is erroneous because Mr. Hershberger admitted paying only the initial down payment toward the premium. In response, Mr. Hershberger contends that the judgment of the trial court is proper because Atlanta Casualty based its declaratory judgment action on the premise that its policy of insurance had been canceled for reason of non-payment of premium while admitting it received the entire amount due on his insurance policy on August 4, 1988.

Pursuant to the premium finance agreement, Mr. Budget forwarded the balance due on Mr. Hershberger's premium to Atlanta Casualty. Thus, as of August 4, 1988, Atlanta Casualty was "fully paid." Atlanta Casualty remained "fully paid," however, for only a brief period of time. When Mr. Hershberger did not make any of the installment payments of the insurance premium provided for under the premium finance agreement with Mr. Budget, Mr. Budget employed the agreement's power of attorney clause to request that Atlanta Casualty cancel Mr. Hershberger's policy. Upon cancellation of the policy, Atlanta Casualty was required by statute to return the unearned portion of the premium to Mr. Budget. § 364.135, RSMo 1986. From the point of cancellation, Atlanta Ca-

sualty was no longer "fully paid," and the trial court erred in finding otherwise.

Mr. Hershberger argues in rebuttal that Atlanta Casualty is estopped from asserting or has waived any defense based on the premium finance agreement and the applicable Missouri law governing those agreements by not mentioning them in its pleadings. In its petition for declaratory judgment, Atlanta Casualty did not specifically mention the premium finance agreement or sections 364.130 and 364.135, RSMo 1986, addressing the cancellation of finance contracts under power of attorney clauses. Atlanta Casualty stated only that "the policy of insurance [issued to Mr. Hershberger] was canceled by THE ATLANTA CASUALTY COMPANY effective September 22, 1988, for reason of nonpayment of premium."

■ Section 379.114, RSMo 1986, which deals with the cancellation of automobile insurance policies in general, provides that an insurer can exercise its right to cancel a policy of insurance for nonpayment of the insurance premium. § 379.114.1(1). Section 379.110, RSMo 1986, defines "nonpayment of premium" to mean the

> failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums on a policy, or any installment of such premium, whether the premium is payable directly to the insurer or its agent or *indirectly under any premium finance plan* or extension of credit

§ 379.110(2) (emphasis added). By its statutory definition, the term "nonpayment of premium" used by Atlanta Casualty in its pleadings encompassed the nonpayment of premium under the premium finance plan. Because Atlanta Casualty has not changed its policy defense, Mr. Hershberger's estoppel/waiver argument fails. *See Brown v. State Farm Mut. Auto. Ins. Co.*, 776 S.W.2d 384, 386–89 (Mo. banc 1989), for an explanation of the doctrines of waiver and estoppel as applied to an insurer's defense to its insured's claim.

### II.

Atlanta Casualty claims as its second point on appeal that the trial court erred in finding that Atlanta Casualty's cancellation

of its policy with Mr. Hershberger was void because the cancellation attempt was not in compliance with either section 364.130, RSMo 1986, or with the premium finance agreement. Atlanta Casualty argues that the cancellation notice complied with both the applicable statute and the premium finance agreement to effect cancellation.

Section 364.130, RSMo 1986, governs cancellation of an insurance policy where the insurance premium has been advanced by a finance company and where the premium finance agreement contains a power of attorney clause "enabling the premium finance company to cancel any insurance contract or contracts listed in the agreement." § 364.130.1. Subsections 364.-130.2 and .130.3 mandate the notice that premium finance companies provide to the insured and the insurer before effecting cancellation:

> 2. Not less than ten days' written notice shall be mailed to the insured, at the last known address shown on the records of the premium finance company, of the intent of the premium finance company to cancel the insurance contract unless the default is cured within such ten-day period.
>
> 3. After expiration of such ten-day period, the premium finance company may thereafter cancel such insurance contract or contracts by mailing to the insurer a notice of cancellation. The insurance contract shall be canceled as if such notice of cancellation had been submitted by the insured, but without requiring the return of the insurance contract or contracts. The premium finance company shall also mail a copy of the notice of cancellation to the insured at the last known address shown on the records of the premium finance company.[2]

■ The director of customer service and premium finance at Atlanta Casualty testified as to the standard practice of Mr. Budget in generating and mailing ten-day notices of intent and notices of cancellation. Evidence of the settled custom and usage of a sender in the regular and systematic transaction of its business is usually sufficient to establish a rebuttable presumption of delivery when direct proof of mailing is impractical due to the large volume of mail involved in the sender's office. *Hills v. McComas Rentals, Inc.*, 779 S.W.2d 297, 299 (Mo.App.1989). However, when evidence is introduced that the particular item allegedly mailed was not received, an issue is created for the trier of fact to resolve. *Id.* at 299–300. Here, Mr. Hershberger denied receiving either notice.

■ The trial court did not indicate exactly how Atlanta Casualty's attempted cancellation of its policy with Mr. Hershberger violated section 364.130 but stated only that the cancellation was "void and illegal for failure to comply" with the statute. This court must assume that the trial court found that Mr. Budget did not properly mail the notices required by section 364.130. Rule 73.01(a)(2); *Long v. Zirkle*, 811 S.W.2d 840, 844 (Mo.App.1991).

■ The scope of review of the trial court's findings in this court-tried civil case is defined in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The decree of the trial court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.* Mr. Hershberger's testimony supports the trial court's finding. As the credibility and weight to be given to his testimony was a matter for the trial court to determine, *Herbert v. Harl*, 757 S.W.2d 585, 587 (Mo. banc 1988), the trial court's finding will not be disturbed on appeal. Point two is denied.

The judgment is affirmed.

All concur.

---

**2.** The premium finance agreement provides a ten-day notice of intent requirement similar to that in section 364.130.2, and the power of attorney clause in the agreement incorporates the "applicable laws" into the authority granted to Mr. Budget under the agreement. Thus, compliance with the statute would necessarily result in compliance with the premium finance agreement.