HOUSTON GENERAL INSURANCE
COMPANY, Respondent,

v.

Linda LACKEY, et al., James M.
Larson, et al., Appellants.

Nos. WD 49532, WD 49669.

Missouri Court of Appeals,
Western District.

July 18, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 29, 1995.

Application to Transfer Denied
Oct. 24, 1995.

Bruce B. Brown, Roy W. Brown, Brown & Brown, Kearney, for appellant Lackey.

Martin M. Meyers, The Meyers Law Firm, Kansas City; Andrew H. McCue, Campbell, Holt & McCue, Kansas City, for appellant Larson.

Richard Frank Modin, Daniel Robert De-Foe, Miller Dougherty & Modin, Kansas City, for respondent.

Before ULRICH, P.J., and LOWENSTEIN and ELLIS, JJ.

ULRICH, Presiding Judge.

Houston General Insurance Co. (Houston General) sued James Larson, Linda Lackey d/b/a The Back Forty, Gary Williams, and Tom Hall in a declaratory judgment action seeking judicial declaration of rights and duties resulting from the issuance of an insurance policy by Houston General to Linda Lackey.[1] The action related to a shooting incident in November 1991 at The Back Forty where Mr. Hall shot Mr. Larson. Houston General insured Ms. Lackey under a policy which provided property coverage and commercial general liability coverage.

In May 1993, Mr. Larson obtained a judgment against Ms. Lackey and Mr. Hall in the underlying tort action pursuant to an agreement under section 537.065, RSMo 1994 executed between Mr. Larson, Ms. Lackey, and Mr. Hall. Houston General denied coverage to Mr. Hall and Ms. Lackey for the shooting claiming Ms. Lackey had sold the business to Mr. Hall on October 21, 1991. The policy provided that the rights and duties under the policy "may not be transferred" without Houston General's written consent excepting the death of an individual insured. Houston General also claimed Ms. Lackey and Mr. Hall violated section 537.065, RSMo 1994 by preventing Houston General from investigating the occurrence, by misleading Houston General by false swearing, and by fraudulent and collusive conduct.

Jury trial was waived, and findings of fact and conclusions of law were filed. The trial court found Ms. Lackey surrendered her insurable interest in The Back Forty and the policy prior to the shooting incident on November 27, 1991, and Houston General had no duty to insure or defend and indemnify. Furthermore, the trial court held that the section 537.065 agreement between Mr. Lar-

---

1. Gary Williams was a mortgagee of the building where The Back Forty was located and did business. He was not a named party defendant in the underlying suit filed by Mr. Larson against Ms. Lackey and Mr. Hall for injuries Mr. Larson sustained from a gunshot wound received when Mr. Hall shot him on the premises. Mr. Williams had sold the premises to Ms. Lackey in a contract for deed. He did not file an answer to the petition for declaratory judgment, and the issues concerned questions of personal liability and were unrelated to the building or to Mr. Williams' interest in the building, whatever that may have been.

son, Ms. Lackey, and Mr. Hall in the underlying suit, and their actions in obtaining the resulting judgment, were improper and unenforceable. Thus, the trial court found that the policy did not cover Linda Lackey and Tom Hall for the shooting of James Larson in November 1991.

The judgment is affirmed as modified.

### Standard of Review

The judgment will be sustained by the reviewing court unless the judgment is unsupported by substantial evidence, the judgment is against the weight of the evidence, or the trial court erroneously declares or erroneously applies the law. *Atlanta Casualty Co. v. Hershberger*, 849 S.W.2d 597, 601 (Mo.App.1993); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Determinations by the trial court as to the weight and credibility of witnesses will not be disturbed on appeal. *Hershberger*, 849 S.W.2d at 601.

### Appeal of James Larson

#### I.

Mr. Larson claims as his first point on appeal that the trial court erred in finding that Ms. Lackey had surrendered her "insurable interest" in the policy before the shooting on November 27, 1991. He asserts that the evidence showed Ms. Lackey could have been held liable for bodily injury occurring on the premises of The Back Forty after ownership in the business was transferred to Mr. Hall. Furthermore, he claims that Houston General expressly agreed to assume liability establishing Ms. Lackey's "insurable interest" under the policy as a matter of law.

A prerequisite to enforcement of an insurance contract is that the insured have an insurable interest in property at the time of making the contract and at the time of the loss. *DeWitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700, 704 (Mo. banc 1984). The insurable interest requirement is necessary to prevent wagering under the guise of insurance and temptation to destroy insured property. *Id.*

In determining whether a party has an insurable interest, emphasis is on the possibility of loss and not ownership. *Sher-*

*wood Medical Co. v. B.P.S. Guard Serv., Inc.*, 882 S.W.2d 160 (Mo.App.1994).

> In general, a person has an insurable interest in the subject matter insured where he has such a relation or concern in such subject matter that he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by happening of the event insured against.

*G.M. Battery & Boat Co. v. L.K.N. Corp.*, 747 S.W.2d 624, 626 (Mo. banc 1988).

Mr. Larson argues that the evidence conclusively established that Ms. Lackey could have been held liable for bodily injury occurring on the premises of The Back Forty and, thus, had an insurable interest. He claims that on the night of the shooting, Mr. Hall was operating the Back Forty under the authority of Ms. Lackey's liquor license and that Ms. Lackey remained liable on the original contract for deed. Mr. Larson, however, fails to expound on his arguments or indicate where in the record this evidence appears. Instead, evidence presented at trial showed that Ms. Lackey gave Mr. Hall a quit claim deed for the building in October of 1991. Moreover, Ms. Lackey closed the bank account of the Back Forty and discontinued payment of premiums on the insurance policy at the same time. She then moved to Springfield, Missouri, married, and did not return to The Back Forty. The judgment of the trial court that Ms. Lackey voluntarily and knowingly surrendered her insurable interest in the business property and policy prior to the November 27, 1991, shooting was supported by substantial evidence.

Additionally, Mr. Larson claims that the determination by the trial court in the underlying tort suit of Ms. Lackey's liability was evidence that Ms. Lackey did not surrender her insurable interest. He cites in his brief a long line of cases that hold an insurer is bound under the principle of res judicata by a determination of an insured's liability where the insurer refuses to defend the insured. The question of coverage under the policy, however, was not addressed in the underlying tort suit and is not barred by res

judicata. *See Whitehead v. Lakeside Hosp. Ass'n.,* 844 S.W.2d 475, 482 (Mo.App.1992) (where insurer denies that the claim against the insured comes within the coverage of the policy, any judgment in the underlying suit would not bind the insurer on the issue of coverage which it had reserved.)

Point one is denied.

## II.

As his second point, Mr. Larson complains that the trial court erred in finding that the section 537.065 agreement between Mr. Larson, Ms. Lackey, and Mr. Hall and their actions in obtaining the resulting judgment were improper and that the judgment was unenforceable against Houston General. Having concluded in point I that Ms. Lackey did not have an insurable interest and thus that Houston General was not liable under the policy, the issue of whether the trial court erred in finding the section 537.065 agreement was invalid and unenforceable against Houston General need not be addressed.

### Appeal of Linda Lackey and Tom Hall

Ms. Lackey claims as her sole point on appeal that the trial court erred when it concluded that Houston General acted in good faith in handling Mr. Larson's claim against Ms. Lackey and in seeking to avoid coverage by filing the declaratory judgment action. Ms. Lackey contends that Houston General's conduct was not relevant regarding the section 537.065 agreement between plaintiff Mr. Larson and defendants Ms. Lackey and Mr. Hall in the underlying suit, and the agreement was not an issue at trial because Houston General's conduct was relevant only as to the issue of attorney fees. Ms. Lackey also claims that no substantial evidence exists to support the trial court's conclusions.

Ms. Lackey, in her answer to Houston General's amended petition for declaratory judgment, requested an award of attorney fees based on Houston General's bad faith in refusing to defend without a reservation of rights and in attempting to deny any coverage under the policy. At trial, however, Ms. Lackey requested and the trial court expressly reserved any ruling on the issue of attorney fees pending the resolution of the policy coverage issues. In fact, Ms. Lackey did not present any evidence regarding the issue of attorney fees.

In the judgment entry, the trial court made the following findings of fact and conclusions of law:

V. *Plaintiff's Allegation of Lack of Good Faith and Fraud and Collusion in the § 537.065 Agreement*

G. The Court specifically finds that Houston General acted in good faith to:

1. Investigate and discover whether there was coverage in this case.

2. Reserving their rights until sufficient facts were available to reach a conclusion.

3. Filing the Declaratory Judgment Action to discover facts they couldn't receive without litigation and to have a Court declare coverage or not.

4. Attempting to stay the underlying liability case of *Larson v. Hall and Lackey.*

H. Houston General's request for judicial determination on all four prior points were legitimate requests and not frivolous and not in bad faith.

I. Houston General could have done more but acted in good faith throughout.

J. § 537.065 should not be used to take advantage of an insurance company acting in good faith.

 Houston General's good faith, however, is irrelevant to a section 537.065 agreement. Section 537.065 allows a claimant and a tort-feasor to contract to limit recovery to specified assets or insurance coverage. § 537.065, RSMo 1994. The agreement between the claimant and tort-feasor is valid if it is free from collusion or fraud. *Whitehead v. Lakeside Hosp. Ass'n,* 844 S.W.2d 475, 480 (Mo.App.1992). Only the conduct of the parties to the agreement is considered in determining the validity of the agreement. Houston General's good faith, therefore, is relevant only to the issue of attorney fees which was expressly reserved by the trial court. The trial court, therefore, erred in ruling on an issue that was not before it. That portion

of the judgment regarding the good faith of Houston General, sections V.G., V.H., V.I., and V.J., is stricken.

The judgment is affirmed as modified.

All concur.