Donna BOWAN, by and through Her Next Friend and Mother, Audrey BOWAN, Respondent,

v.

GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA, and Express Medical Transporters, Appellants.

Nos. ED 85145 & ED 85148.

Missouri Court of Appeals, Eastern District, Division One.

Aug. 16, 2005.

Application for Transfer to Supreme Court Denied Sept. 22, 2005.

Phillip C. Rouse, Steven H. Mustoe, Chris Stucky, Kansas City, MO, for Appellant.

James P. Leonard, Devereaux, Stokes, Nolan & Fernandez, P.C., St. Louis, MO, for Respondent.

GARY M. GAERTNER, SR., Presiding Judge.

Appellants, General Security Indemnity Company of Arizona ("GSIC") and Express Medical Transporters ("EMT"), appeal from the judgment of the Circuit Court of the City of St. Louis in favor of respondent, Donna Bowan, by and through her next friend and mother, Audrey Bowan ("Bowan"). We affirm.

Bowan, who is now deceased, was a physically and mentally disabled individual. EMT, a non-emergency transportation company, regularly transported Bowan to and from her place of work.

On August 17, 2001, Bowan was a passenger in a fifteen passenger van owned by EMT and driven by EMT employee Larry Briggs. The van was involved in a collision with a pickup truck driven by Amy Jo Demery.[1] At the time of the accident, Bowan was not wearing a seatbelt. Bowan sustained injuries in the accident rendering her a paraplegic. As a result of her injuries, Bowan was forced to move into a nursing home.

Bowan sued EMT and Demery for injuries she sustained in the collision. Bowan alleged that Demery, EMT, and Briggs were negligent in the operation of their respective vehicles and that EMT and Briggs were negligent in failing to determine that Bowan was not wearing a seatbelt before the collision.

At the time of the collision, EMT was insured under two different policies. EMT had a Commercial General Liability ("CGL") policy with GSIC. The CGL policy had liability limits of $1,000,000. EMT also had a Business Auto policy with GSIC, which also had liability limits of $1,000,000. EMT's Business Auto policy further provided Underinsured Motorist ("UIM") coverage, which had liability limits of $1,000,000.

Bowan was an "insured" under EMT's Business Auto policy, which entitled her to receive UIM benefits under certain circumstances. Before trial, Bowan entered into an agreement with EMT pursuant to section 537.065 RSMo (2000).[2] According

1. Demery had $30,000 in liability coverage through Farmers Insurance Company, and Farmers Insurance Company paid the $30,000 to Bowan.

2. All further statutory references are to RSMo (2000) unless otherwise indicated.

to this agreement, Bowan agreed not to execute or levy against the personal assets of EMT, but rather to pursue collection of any judgment through EMT's CGL and Business Auto policies. In exchange for Bowan's promise, GSIC paid Bowan $930,000 through "The Donna Bowan Special Needs Trust." GSIC also promised that $30,000 would be held in trust for the benefit of "The Donna Bowan Special Needs Trust" against any possible claims made by third parties against GSIC. The $930,000 payment was made to Bowan under the UIM endorsement of EMT's Business Auto policy.

Bowan's case against Demery and EMT went to trial on January 21, 2003. The jury returned a verdict against Demery and EMT on January 24, 2003. The jury assessed Bowan's damages at $3,500,000, but also found Bowan was twenty percent at fault for her negligence in failing to wear a seatbelt. The trial court entered judgment against Demery and EMT in the amount of $2,800,000.

We reversed the trial court's judgment with respect to the award of prejudgment interest, but affirmed the judgment in all other respects. *Bowan v. Express Medical Transporters*, 135 S.W.3d 452, 465 (Mo. App. E.D.2004).

The present case is the result of Bowan's attempt to collect this judgment from GSIC. Bowan filed a petition for equitable garnishment against GSIC and EMT in an attempt to get GSIC to satisfy the judgment against EMT for EMT's negligence as determined by the judgment in the underlying case.

GSIC filed a motion for summary judgment in response in which it argued: (1) there was no coverage under the CGL policy because of an auto exclusion in that policy; (2) Bowan already recovered $990,000 [3] of the $1,000,000 in coverage afforded under the UIM endorsement; and (3) Bowan is not entitled to duplicate payments under the UIM endorsement and the liability portion of the auto policy.

This matter came before the trial court based on a joint stipulation of facts, GSIC's motion for summary judgment and "memorandum in response thereto," Bowan's response to GSIC's motion for summary judgment and memorandum in opposition thereto, oral argument, and Bowan's exhibits A through H that were submitted during oral argument. On August 2, 2004, the trial court found that the CGL policy was to be applied to pay the judgment rendered against GSIC in the underlying case. The trial court also found that the business auto policy provided coverage and that there would be no "duplicate" payment until such time as the entire judgment had been satisfied. The trial court entered judgment in favor of Bowan for $1,840,000 for damages to be covered by the CGL policy and the business auto policy, in favor of Bowan for $165,600.50 in pre-judgment interest under the CGL policy, and in favor of Bowan for $248,626 in post-judgment interest under the CGL policy and the business auto policy. The trial court subsequently amended its judgment to award $208,303.79 in pre-judgment interest.[4] This appeal followed.

 When a case is tried on stipulated facts, the only issue we review on

3. The $990,000 includes $930,000 and $30,000 pursuant to the section 537.065 agreement, and $30,000 that Farmers Insurance Company paid Bowan for Demery's liability.

4. The trial court amended the pre-judgment interest to $208,303.79 in order to be consistent with a separate decision of the trial court after the underlying case was remanded for a re-calculation of pre-judgment interest.

appeal is whether the trial court reached the proper legal conclusions from the stipulated facts. *Melton v. Country Mut. Ins. Co.*, 75 S.W.3d 321, 324 (Mo.App. E.D. 2002). A controversy involving the interpretation and application of an insurance contract is a matter of law for the court when the underlying facts are not in question. *Hunt v. Capitol Indem. Corp.*, 26 S.W.3d 341, 342 (Mo.App. E.D.2000).

■ In their first point on appeal, GSIC and EMT argue the trial court erred in finding that the CGL policy provided coverage for Bowan's personal injury claims.

■ Where an insurance company relies upon an exclusion in its policy to deny coverage, the insurance company carries the burden to prove the facts that make the exclusion applicable. *Columbia Mut. Ins. Co. v. Neal*, 992 S.W.2d 204, 207 (Mo. App. E.D.1999). In our review of the policy, "[w]e will construe the exclusion clause strictly against the insurer." *Id., quoting Killian v. State Farm Fire & Cas. Co.*, 903 S.W.2d 215, 217 (Mo.App. W.D.1995). Insurance contracts are designed to furnish protection; as a result, where possible, we will interpret them to grant coverage rather than defeat it. *Centermark Properties, Inc. v. Home Indem.*, 897 S.W.2d 98, 100–01 (Mo.App. E.D.1995). Generally, we find definitions in an insurance policy to be controlling as to the terms used within the policy. *Polston v. Aetna Life Ins. Co.*, 932 S.W.2d 786, 788 (Mo.App. E.D.1996).

■ It is broadly accepted that where an insured risk and an excluded risk constitute concurrent proximate causes of an accident, a liability insurer is liable as long as one of the causes is covered by the policy. *Braxton v. United States Fire Ins. Co.*, 651 S.W.2d 616, 619 (Mo.App. E.D. 1983).

The CGL policy states that the policy does not apply to " '[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and 'loading and unloading.' " Further, "loading and unloading" is defined as "the handling of property."

The trial court found that driver's duty to ensure that the disabled passengers were properly secured arose when driver was standing outside of the vehicle before operation. Further, the trial court found that this case did not fall under the "loading and unloading" definition in the policy. As a result, the trial court found that the CGL policy provided coverage in the underlying case.

■ We agree that based on the policy's definition of "loading and unloading," the failure to secure Bowan does not qualify for the exclusion because she is not property. Therefore, the key question is whether the failure to secure Bowan is a negligent act distinct from the "operation" of the vehicle, and further whether the failure to secure is a concurrent proximate cause of Bowan's injuries such that GSIC would be liable under the reasoning of *Braxton*. Missouri cases interpreting similar policy provisions fall into two basic categories. The first category involves cases where the negligence is independent of or divisible from the use of a motor vehicle as contemplated by the policy.

For example, in *Centermark*, a police officer sued Centermark and a security officer employed by it after the police officer's patrol car was struck by a vehicle owned by Centermark and driven by an unauthorized third person. *Centermark*, 897 S.W.2d at 99. In that case, relying on the reasoning of *Braxton*, we found coverage, because there were allegations of negligence that were independent of owner-

ship, maintenance, operation, or use of an automobile. *Id.* at 101. Specifically, Centermark "failed to comply with set procedures for apprehending, subduing, and controlling third parties and persons suspected of criminal activity and it failed to have proper and adequate hiring practices and training policies and programs for its security officers." *Id.*

In *Neal,* a driver backed a vehicle over a child, who was supervised by his grandparents, killing the child. *Neal,* 992 S.W.2d at 205. We found that this case was one of first impression because it involved negligent supervision of the child who was run over by the vehicle, rather than negligent entrustment and negligent supervision of employees. *Id.* at 208. Further, we found that the automobile exclusion did not apply to mother's claim against the grandparents for negligent supervision of a minor because the use of the vehicle that caused the harm was only incidental to the claim. *Id.* at 209. In other words, the claim for negligent supervision of a minor can occur without the use of a vehicle. *Id.*

On the other hand, in *Porterfield,* an insured was driving a truck when the trailer became unhitched and struck and injured the plaintiffs. *American States Ins. Co., Inc. v. Porterfield,* 844 S.W.2d 13, 14 (Mo.App. W.D.1992). Plaintiffs argued that the commercial general liability policy should apply because Porterfield was negligent in the supervision of his employees as to the proper method of hitching the trailer to the truck. *Id.* at 15. Our colleagues from the Western District found that the injuries arose out of the use of the truck and not from negligent supervision. *Id.* at 16. Thus, the automobile exclusion applied and there was no coverage for any injuries arising out of an automobile accident. *Id.*

Further, in *Politte,* a passenger sustained an injury in a car accident due to the driver's negligence. *Shelter Mut. Ins. Co. v. Politte,* 663 S.W.2d 777, 778 (Mo. App. E.D.1983). The passenger filed a claim against the driver's father for negligent entrustment of his vehicle to the driver, his son. *Id.* We found that because an essential element of the liability of the driver's father (entrustor) is the concurrent negligence of the driver, the liability of the father of the driver necessarily arises out of the operation of the motor vehicle, which the policy excluded. *Id.* at 779. Thus, in *Politte* where liability was premised on negligent entrustment, a necessary precondition to the liability of the driver's father was the negligent use of the car by the entrustee. *Politte,* 663 S.W.2d at 779.

This case is distinguishable from *Politte* in that even if Driver had not operated the van negligently by violating the traffic signal and it was involved in an accident when the vehicle was not in operation, he still could have been liable for negligence for the failure to "make certain" Bowan was wearing her seatbelt. Thus, the failure to properly secure Bowan was an independent and distinct act of negligence that did not necessarily involve operation of the vehicle.

This distinction is bolstered by our opinion in the earlier *Bowan* case. First, Bowan alleged "two distinct counts of negligence against EMT: (1) negligence in the operation of the motor vehicle and (2) negligence in the loading of her into the van." *Bowan,* 135 S.W.3d at 457. The court in that case found that EMT was thirty percent at fault for violation of a traffic signal and twenty percent at fault for failing to "make certain" that Bowan was wearing her seatbelt. *Bowan,* 135 S.W.3d at 456. Thus, it found liability with regard to two distinct negligent acts.

Therefore, this case fits into the category of cases that have found that the exclu-

sionary clause did not prohibit coverage. Like in *Centermark* and *Neal*, the operation of the van was incidental. The finding in this case, that EMT was liable for failing to properly secure Bowan, is similar to the finding in *Neal* with respect to negligent supervision of the child who was run over by a vehicle. Both claims involved individuals, who to some extent, needed supervision, and were injured in part because of a lack of supervision. Further, this case is distinguishable on the facts from *Porterfield* because in that case, the court specifically held that the injuries did not arise out of the negligent supervision of employees but from the use of the truck. In this case, we found in the underlying case that both the failure to properly secure Bowan and the negligent operation of the vehicle were distinct causes of Bowan's injuries. Therefore, there existed an independent and distinct act of negligence (the failure to properly secure Bowan) that was a cause of Bowan's injuries and was not excluded under the policy. Where an insured risk and an excluded risk constitute concurrent proximate causes of an accident, a liability insurer is liable as long as one of the causes is covered by the policy. *Braxton*, 651 S.W.2d at 619.

Therefore, the trial court did not err in finding Bowan was entitled to recover under the CGL policy for her personal injury damages. Point denied.

In their second point on appeal, GSIC and EMT argue the trial court erred in finding that the CGL policy and the business auto liability policy provided coverage for the $1,840,000 judgment.

■■■ GSIC makes two claims in this point on appeal. First, it argues the limits of insurance language in both the business auto liability policy and the UIM endorsement to that policy limit Bowan's recovery to $1,000,000 and she has already recovered $960,000 from GSIC. Second, GSIC argues the "anti-stacking" provision of the auto liability policy restricts coverage for any accident to the highest applicable limit of insurance under any one policy, which in this case would be $1,000,000. We will address this second contention first.

■■■ Where a party raises an issue for the first time on appeal, that party has failed to preserve the issue for appellate review. *See Rosenfeld v. Thoele*, 28 S.W.3d 446, 449 (Mo.App. E.D.2000). We will not find that the trial court has erred on a matter that has not been brought to its attention. *Id.*

GSIC raises the issue of the "anti-stacking" provision for the first time on appeal. Therefore, that issue is not preserved for our review.

■■■ With regard to the limits of insurance argument, the business auto policy states that "[n]o one will be entitled to receive duplicate payments for the same elements of 'loss' under this Coverage Form and any … Underinsured Motorist Coverage Endorsement attached to this Coverage Part." The UIM Endorsement contains a provision that states "[n]o one will be entitled to receive duplicate payments for the same elements of 'loss' under this Coverage and this policy's Liability Coverage. We will not make a duplicate payment under this Coverage for any element of 'loss' for which payment has been made by or for anyone who is legally responsible."

■■■ When construing an insurance policy, we must give the words their plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties. *Millers Mut. Ins. Ass'n v. Shell Oil Co.*, 959 S.W.2d 864, 867 (Mo.App. E.D.1997). We find ambiguity when the language of an insurance policy is reasonably and fairly open to different construc-

tions, and there is duplicity, indistinctness, or uncertainty of meaning. *Chase Resorts, Inc. v. Safety Mut. Cas. Corp.*, 869 S.W.2d 145, 150 (Mo.App. E.D.1993). When determining whether the language in the policy is ambiguous, we will view the words the way they would normally be understood by the average layperson. *Id.* Further, we will consider whether a phrase is ambiguous by reading the policy as a whole with reference to the associated words. *Id.* If we find the language of the policy is ambiguous, we will adopt the interpretation most favorable to the insured. *Id.*

In *Home Ins. Co. of New York v. Smith*, 235 Mo.App. 552, 140 S.W.2d 64, 67 (E.D. 1940), a case dealing with the subrogation right of an insurance company, the court noted in *dicta* that "where the aggregate of both sums recovered amounts only to payment of the loss in full, there is no double recovery by the insured for the one loss he has sustained...." However, that case involved the interaction of an insured, the insured's insurance company, and a third party tortfeasor. In this case, the interaction at issue is between the language in the business auto policy and the UIM endorsement of the policy. It is unclear whether "duplicate payments" as used in relation to the interplay of these policy provisions can be given the same meaning as in the *Smith* case.

We find that the use of the term "duplicate payments" in the business auto policy and its UIM endorsement is ambiguous. It could mean that the insured cannot receive payments under both the business auto policy and its UIM endorsement or it could be interpreted to mean that the insured cannot, through collection under different policies or endorsements, receive more than the entire amount of the judgment to which he was entitled.

Interpreting this ambiguity in the manner most favorable to the insured requires us to find that Bowan would not receive duplicate payments if she recovered from both the business auto policy and its UIM endorsement. Bowan will not receive more than the full amount of damages she is entitled to under the trial court's judgment under any one policy. Therefore, she did not receive "duplicate payments" under the different policies.

Therefore, the trial court did not err in finding that the CGL insurance policy and the business auto liability policy and its UIM endorsement all provided coverage for the judgment. Point denied.

In its third point on appeal, GSIC argues the trial court erred in finding in its August 2, 2004 judgment, as amended by its September 1, 2004 order, that GSIC is liable under the CGL insurance policy to pay for the prejudgment interest awarded in Bowan's personal injury case.

The CGL policy contains a provision that states:

> We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
> * * *
>
> Prejudgment interest awarded against the insured on that part of the judgment we pay.

We found above that GSIC is liable under the CGL policy for Bowan's personal injury claims, and that Bowan does not receive "duplicate payments" under the different policies until the complete measure of her damages is paid. Therefore, based on the above provision, we also find that GSIC is required to pay the prejudgment interest on Bowan's judgment. Point denied.

SHERRI B. SULLIVAN, J. and NANNETTE A. BAKER, J. concur.