Jordon SEXTON, Plaintiff–Respondent,

v.

OMAHA PROPERTY AND CASUALTY INSURANCE COMPANY, Defendant–Appellant.

No. 27828.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 31, 2007.

Gary E. Wiseman, St. Louis, MO, for defendant-appellant.

Randall Ray Cowherd, Springfield, MO, for plaintiff-respondent.

JEFFREY W. BATES, Chief Judge.

Omaha Property and Casualty Insurance Company (Omaha) appeals from a summary judgment in favor of Jordon Sexton (Sexton) in his equitable garnishment action against the insurer. The judgment awarded Sexton the $300,000 limit of a homeowner's policy issued by Omaha, plus post-judgment interest on the underlying judgment in Sexton's personal injury action. On appeal, Omaha argues the trial court erred as a matter of law because: (1) the underlying action arose out of the use of a motor vehicle and was, therefore, excluded from coverage under the homeowner's policy; and (2) the award of post-judgment interest applies only to the policy limit and not to the entire judgment. Finding no error, we affirm.

## I. Standard of Review

The material facts presented for the trial court's consideration in Sexton's motion for summary judgment were undisputed, and both Omaha and Sexton agree that this appeal presents an issue of law for our determination. We utilize a *de novo* standard of review and accord no deference to the decision below. *Poage v. State Farm Fire & Cas. Co.*, 203 S.W.3d 781, 783 (Mo. App.2006); *Bland v. IMCO Recycling, Inc.*, 122 S.W.3d 98, 102 (Mo.App.2003). Our job is to decide whether Sexton was entitled to judgment as a matter of law. Rule 74.04(c)(6); *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993) (the key to summary judgment is the undisputed right to judgment as a matter of law).[1] We review the propriety of the trial court's grant of summary judgment in Sexton's favor based on the record submitted to the trial court. *ITT*, 854 S.W.2d at

1. All references to rules are to the Missouri Court Rules (2007).

376; *Bumm v. Olde Ivy Development, LLC,* 142 S.W.3d 895, 897 (Mo.App.2004).

## II. Factual and Procedural Background

On September 23, 2001, Sexton was injured in a motor vehicle accident that occurred on Route W in Christian County, Missouri. The accident occurred when Sexton swerved to avoid beer cans thrown onto the roadway by Clint Restemayer (Restemayer), the front-seat passenger in a Jeep traveling ahead of Sexton and operated by Toby Blansit (Blansit). Sexton's vehicle left the roadway and overturned several times, causing him to sustain severe injuries.

In April 2003, Sexton filed suit against Blansit and Restemayer. In Count III of Sexton's First Amended Petition, he alleged that Blansit was negligent for acting in concert with Restemayer, for assisting or encouraging his actions and for failing to prevent his actions. Omaha had issued a homeowner's policy (the Policy) to Blansit's mother and stepfather. The Policy provided liability coverage with a limit of $300,000 per occurrence and was in effect at the time of the September 2001 accident. Blansit was then 17 years old and resided with his mother and stepfather. Omaha deemed Blansit to be an "insured" under the Policy for purposes of the underlying personal injury suit. On April 29, 2003, Sexton notified Omaha of his lawsuit against Blansit.

Initially, Blansit was provided a defense in Sexton's lawsuit by counsel retained by another insurance company, American Standard Insurance Company of Wisconsin (American). American retained David Sullivan (Sullivan), who communicated with Omaha on several occasions. For example, Sullivan advised Omaha in September 2003 that the depositions of Blansit and Restemayer were scheduled for that month. Omaha did not participate in either deposition. In early November 2003, Sullivan forwarded Sexton's First Amended Petition to Omaha and demanded that Omaha assume the defense thereof and provide coverage under the Policy. On November 13, 2003, Sullivan faxed a letter to Omaha advising that American had tendered its policy limits to Sexton and that American would be withdrawing from Blansit's defense. Sullivan again demanded that Omaha reply to prior demands to assume the defense and provide coverage.

■ By letter dated November 13, 2003, Omaha denied coverage to Blansit for Sexton's claim on the ground that the Policy's exclusion for "motor vehicle liability" was applicable. The Policy's definition of "motor vehicle liability" included liability for bodily injury or property damage arising out of the "[m]aintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person...." In Omaha's letter denying coverage, the insurer stated that "[a]ll of the allegations against Mr. Blansit necessarily involve the use and operation of the motor vehicle."[2]

---

**2.** The Policy definition of "motor vehicle liability" also included liability for bodily injury or property damage arising out of an insured's "[f]ailure to supervise or negligent supervision of any person involving such vehicle...." In Omaha's letter denying coverage, the insurer relied on "the use and operation by [Blansit] of a motor vehicle" as the reason for the denial. In Omaha's point on appeal, it argues that the exclusion was applicable be-

cause Sexton's injuries arose out of the use of a motor vehicle. In the argument portion of Omaha's brief, however, it also attempts to rely upon that portion of the exclusion addressing negligent supervision. Arguments raised in the argument portion of the brief only and not included in the point relied on are not preserved for appeal. *In re K.M.C., III,* 223 S.W.3d 916, 926 n. 5 (Mo.App.2007); Rule 84.04; *see State v. Douglas,* 132 S.W.3d

On January 2, 2004, upon Sullivan's advice, Blansit negotiated a settlement agreement pursuant to § 537.065 to protect himself from personal exposure.[3] The settlement agreement restricted recovery in the lawsuit against him to the coverage and benefits available under the Policy. Thereafter, Sexton proceeded with the trial of his claims against Blansit and Restemayer.

On January 6, 2004, the trial court found all issues in favor of Sexton on his claim against Blansit.[4] Because Sexton had alleged in his petition that Blansit was negligent in participating, encouraging, assisting and failing to prevent the conduct of Restemayer, the trial court necessarily resolved that issue in Sexton's favor. Sexton also presented evidence that he sustained the following injuries: (1) closed head trauma; (2) an acute post-traumatic hemorrhage contusion in the right frontal lobe of the brain; (3) bilateral jaw fractures; (4) multiple and severe lumbar fractures; (5) reduced vision in his right eye due to retinal injury and subsequent optic atrophy; (6) a bladder injury; and (7) intellectual and psychological injuries, including depression. Due to these injuries, Sexton was left with permanent disabilities, and he incurred approximately $415,000 in medical expenses. The court awarded Sexton $4,000,000 in damages. Blansit did not appeal from the judgment entered against him.

On May 12, 2004, Sexton filed an equitable garnishment action against Omaha, seeking payment of the underlying judgment up to the Policy limit, plus interest and costs. In Omaha's answer, it alleged that there was no coverage for Blansit due to the Policy exclusion of liability coverage for damages resulting from "motor vehicle liability[.]"

On March 3, 2006, Sexton moved for summary judgment on his equitable garnishment action, arguing the motor vehicle liability exclusion did not apply because his principal allegations of negligence against Blansit "did not assert negligence in the operation of the vehicle, which merely acted as the site at which the negligent conduct of aiding, encouraging and failing to prevent the throwing of debris at [Sexton's] vehicle occurred." Omaha failed to respond to Sexton's motion, and judgment was entered against it on April 18, 2006. Three days later, Omaha moved to set aside the entry of judgment and requested leave to file its response out of time. The trial court sustained the motion. In Omaha's response, it contended that the only act performed by Blansit was the operation of a motor vehicle in front of the vehicle operated by Sexton, and as such, the motor vehicle exclusion applied to preclude coverage under the Policy. Omaha asked that Sexton's motion for summary judgment be denied and that judgment be entered in favor of Omaha.

On May 12, 2006, the trial court granted Sexton's motion for summary judgment and entered judgment in his favor for the Policy limit of $300,000, plus interest at the rate of 9% on Sexton's $4,000,000 judgment against Blansit. This appeal followed.

---

251, 258 n. 5 (Mo.App.2004). Consequently, the applicability of the negligent supervision portion of the exclusion is not properly before us, and we will not address that aspect of Omaha's argument in this opinion.

**3.** All references to statutes are to RSMo (2000). Section 537.065 specifically authorizes a claimant and an alleged tortfeasor to

enter into a contract providing that any ensuing judgment will only be collected from "any insurer which insures the legal liability of the tort-feasor for such damage. . . ."

**4.** At trial, Sexton voluntarily dismissed his claim against Restemayer with prejudice.

848

## III. Discussion and Decision

On appeal, Omaha presents two points for our decision. Omaha contends the trial court erred as a matter of law because: (1) the underlying action arose out of the use of a motor vehicle and was, therefore, excluded from coverage under the Policy; and (2) Sexton was only entitled to post-judgment interest on the $300,000 policy limit and not the entire $4,000,000 judgment against Blansit. We will address each point in turn.

### Point I

■ In Omaha's first point, it contends the trial court erred in granting Sexton's motion for summary judgment on his equitable garnishment claim because the Policy exclusion for the "use and operation of a motor vehicle" applies to exclude coverage. "When an insurance company relies on a policy exclusion to assert noncoverage, it has the burden of proving that such an exclusion is applicable, and we will construe the exclusion clause strictly against the insurer." *Killian v. State Farm Fire & Cas. Co.,* 903 S.W.2d 215, 217 (Mo.App. 1995); *Bowan ex rel. Bowan v. Gen. Sec. Indem. Co. of Arizona,* 174 S.W.3d 1, 5 (Mo.App.2005); *see Shahan v. Shahan,* 988 S.W.2d 529, 539 (Mo. banc 1999) ("exclusions are construed narrowly, in favor of coverage"); *Gibbs v. Nat'l Gen. Ins. Co.,* 938 S.W.2d 600, 605 (Mo.App.1997) (coverage clauses are read broadly, while exclusions read narrowly, to afford the greatest possible coverage). Specifically, Omaha argues the undisputed material facts demonstrate that the allegations pled by Sexton against Blansit in the underlying cause of action arose out of Blansit's use and operation of a motor vehicle. We disagree.

Our disposition of this point is controlled by *Steelman v. Holford,* 765 S.W.2d 372 (Mo.App.1989), which also involved the question whether an exclusion for the "use of a motor vehicle" under a homeowner's policy applied to exclude coverage. There, Steelman was injured by a gunshot in the leg while driving his tractor trailer truck. He was driving in the vicinity of a jeep driven by Holford, who was riding with a passenger, Friedly. *Id.* at 373–74. Both Holford and Friedly admitted to randomly discharging a firearm while riding in the jeep, and it was not determined who actually fired the shot that caused Steelman's injury. *Id.* When Steelman brought his personal injury suit against Holford, his homeowner's insurer denied coverage and refused to defend Holford, relying on the above policy exclusion. This Court determined that exclusion did not apply, explaining:

> There is no question as to whether Steelman was shot while Holford and Friedly were occupying Holford's moving jeep, with one of them being the driver and the other the passenger. That fact, however, is not enough to exclude coverage. There must be proof that there was a causal connection between the injury and the "use" of the motor vehicle in order to hold that the injury arose out of the use of a motor vehicle. No such causal connection is shown under the facts of this case. At best, the jeep was merely the "situs" or "locus" of Steelman's injury, as the discharge of the rifle was unconnected with the inherent use of the motor vehicle in question.

*Id.* at 378 (citation omitted).

■ We reach the same conclusion here. Sexton's injuries arose from swerving his car to avoid beer cans thrown into the path of his vehicle. The same accident could have been caused by someone throwing beer cans from the side of the road, an overpass, etc. Like *Steelman,* Blansit's Jeep was merely the situs of Sexton's inju-

ry because the throwing of the beer cans was "unconnected with the inherent use of the motor vehicle in question." *Id.* Omaha attempts to distinguish *Steelman* by arguing that it was the driver who fired the shot that caused the injury. Omaha's argument is factually incorrect because, in *Steelman*, it was not determined whether it was the driver or the passenger who fired the shot that caused the injury. More importantly, Omaha fails to perceive that the relevant inquiry was not who fired the shot, but rather, the causal connection between the injury and the use of the vehicle.[5] *Id.; see, e.g., Cameron Mut. Ins. Co. v. Ward,* 599 S.W.2d 13, 18 (Mo.App. 1980) (no causal connection where human conduct wholly independent of the operation or use of the vehicle caused a rifle to discharge from a pickup truck parked in a field; "the pickup truck was the mere "situs" or "locus" of the accident and that the discharge of the rifle and the resultant injury ... did not arise 'out of the use' of the pickup truck"); *accord Brown v. Shelter Mut. Ins. Co.,* 838 S.W.2d 148, 151 (Mo.App.1992) (no causal connection where "the vehicle was the 'situs' or 'locus' for the shooting.... Brown's death was not a result of the 'ownership, maintenance or use of a motor vehicle' "); *see also Bowan ex rel. Bowan v. Gen. Sec. Indem. Co. of Arizona,* 174 S.W.3d 1, 6 (Mo.App.2005) (no causal connection where failure to properly secure disabled person in a van "was an independent and distinct act of negligence that did not necessarily involve operation of the vehicle"); *State Farm Mut. Auto. Ins. Co. v. Flanary,* 879 S.W.2d 720, 722–23 (Mo.App.1994) (no causal connection between the "use" of Flanary's truck and the collapse of the boom extension, which allegedly fell as a result of Flanary's acts as a welder, not as a result of any use of the truck). Similar results have been reached in other jurisdictions. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Thomas,* 273 So.2d 117, 120–21 (Fla.App.1973) (exclusion in homeowner's policy for use of a motor vehicle did not apply to exclude coverage for injuries resulting from a pop bottle thrown out the window onto the roadway; injuries did not arise from use of motor vehicle, but "out of negligently throwing the bottle in the roadway. It would not have been altered or affected had [the insured] in a similar manner negligently thrown a bottle into

---

5. Omaha also attempts to distinguish *Steelman* by arguing that unlike the driver there, Blansit was not negligent at all. Specifically, Omaha asserts that "all Blansit did was drive the vehicle in front of [Sexton]" and it was Restemayer who caused Sexton's injuries. Omaha's argument, however, ignores the January 6, 2004 judgment establishing Blansit's liability. In that judgment, the trial court found all issues in favor of Sexton, thereby implicitly finding that Blansit was negligent in participating, encouraging, assisting and failing to prevent the conduct of Restemayer. Omaha chose not to participate in the underlying action and voluntarily gave up its right to challenge the underlying judgment. Because the underlying judgment finally determined that Blansit was negligent by acting in concert with Restemayer, the issue is now *res judicata* and immune from collateral attack. *Houston Gen. Ins. Co. v. Lackey,* 907 S.W.2d 177, 179–80 (Mo.App.1995) (insurer is bound under the principle of *res judicata* by a determination of an insured's liability where insurer refuses to defend the insured; coverage under the policy, however, was not addressed in the underlying tort suit and is not barred by *res judicata); see Reese v. U.S. Fire Ins. Co.,* 173 S.W.3d 287, 296 (Mo.App.2005) (given valid jurisdiction below, insurer "may not collaterally attack the underlying judgment or quash the instant equitable garnishment action"); *Ferrellgas, L.P. v. Williamson,* 24 S.W.3d 171, 177 (Mo.App.2000) (insurer precluded from re-litigating liability issues when insurer elects not to participate). Therefore, like the driver and passenger acting together in *Steelman,* the underlying judgment established that Blansit acted in concert with Restemayer in throwing the beer cans that caused Sexton's injuries.

the roadway while seated in a car parked on the shoulder of the road, or while standing outside of the car, or while standing on an overpass above the roadway"); *United Services Auto. Ass'n v. Aetna Cas. & Sur. Co.*, 75 A.D.2d 1022, 429 N.Y.S.2d 508, 509–10 (1980) (exclusion in homeowner's policy for use of a motor vehicle did not apply to exclude coverage for injuries of boy hit in the eye by "spit ball" while riding in the vehicle because injury "did not arise out of the 'ownership, maintenance or use' of the motor vehicle").

There was no causal connection between the operation and use of Blansit's Jeep and Sexton's injuries. As such, the harm that resulted from Blansit's acts was not inherently tied to the "use and operation of a motor vehicle," and the Policy exclusion does not apply. Point I is denied.

### Point II

■ Omaha's policy provides that the insurer will pay "[i]nterest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies." It is undisputed that Omaha has not paid, tendered or deposited any money in conformity with that policy provision. Nevertheless, Omaha's second point contends the trial court erred in awarding Sexton post-judgment interest on the entire $4,000,000 judgment, rather than on the $300,000 limit of the Policy. Omaha bases its argument on the insuring agreement of the policy, which states that Omaha will pay "the damages for which the 'insured' is legally liable." Because Blansit entered into a § 537.065 agreement with Sexton, Omaha argues that Blansit is only legally obligated to pay $300,000 in damages. We disagree.

■ Omaha's argument under this point consists of only three paragraphs and lacks any citation to relevant authority. When "an appellant neither cites relevant authority nor explains why such authority is not available, the appellate court is justified in considering the point abandoned." *Osage Water Co. v. City of Osage Beach*, 108 S.W.3d 751, 755 (Mo.App.2003); *Thummel v. King*, 570 S.W.2d 679, 687 (Mo. banc 1978); *Shiyr v. Pinckney*, 896 S.W.2d 69, 71 (Mo.App.1995). Point II has been abandoned and is denied.[6]

We conclude that Sexton was entitled to judgment as a matter of law. Accordingly, the judgment of the trial court is affirmed.

GARRISON and LYNCH, JJ., Concur.

---

6. Omaha's failure to cite any relevant authority to support its argument is understandable. *See Butters v. City of Independence*, 513 S.W.2d 418, 425 (Mo.1974) (city's execution of a § 537.065 agreement did not prevent the trial court from finding that the city was "obligated to pay" damages within the meaning of its insurance policy); *Farmers Mut. Auto. Ins. Co. v. Drane*, 383 S.W.2d 714, 719–20 (Mo.1964) (§ 537.065 agreement executed by claimant and tortfeasor did not terminate the latter's legal liability, but only operated to limit the enforceability of a judgment based upon such liability).