In re ESTATE OF Wilson MURLEY, Deceased Dale D. Murley, and Kathy Murley, Executors, and Kathy Murley, Individually, Plaintiffs/Appellants/Respondents,

v.

Shelter Mutual Insurance Co., Respondent/Cross–Appellant,

and

Don Vespa, Lenise Vespa, and Nicholas R. Forbes, Defendants.

Nos. 28493, 28553.

Missouri Court of Appeals,
Southern District,
Division Two.

March 3, 2008.

Motion for Rehearing and Transfer Denied March 25, 2008.

Application for Transfer Denied May 20, 2008.

Richard L. Schnake, Paul G. White, and Judson B. Poppen, Neale & Newman, L.L.P., of Springfield, MO, for appellant.

Angela K. Drake, and Nicole D. Lindsey, Lowther Johnson, of Springfield, MO, for respondent/cross-appellant Shelter Mut. Ins. Co.

GARY W. LYNCH, Chief Judge.

Plaintiffs, the Estate of Wilson Murley, Kathy Murley, and Dale D. Murley ("the Murleys") filed a motion for summary judgment on their equitable garnishment action under section 379.200, RSMo 2000, against defendant Shelter Mutual Insurance Company ("Shelter"). The Murleys claim that Shelter provided insurance coverage under two policies for the liability of Don Vespa and Lenise Vespa, as established in an underlying liability judgment, for injuries sustained by Wilson and Kathy.[1] Both parties appeal the trial court's

---

1. Where family members have the same last name, we will refer to them individually by their first names. No disrespect is intended.

grant of the Murleys' motion for summary judgment; Shelter claiming that the Murleys were not entitled to judgment as a matter of law, and the Murleys claiming the trial court failed to award them the full amount of the interest on the underlying liability judgment they were entitled to under the policies. Finding that Shelter's claim is dispositive of both appeals and that the Murleys are not entitled to judgment as a matter of law based upon the record before us, we reverse.

### *Factual and Procedural Background*

The following uncontroverted facts related to the Murleys' motion for summary judgment were provided to the trial court by the parties. Wilson's estate was duly probated in the Iowa District Court for Sac County, Iowa. Kathy and Dale are the executors of Wilson's estate. Don and Lenise are husband and wife and are residents of Christian County, Missouri. Nicholas R. Forbes, Lenise's son and Don's stepson, resided with the Vespas at their residence in Nixa, Missouri. At all relevant times, Shelter was and is a Missouri corporation in the business of providing insurance to individuals, including homeowners' policies and dwelling policies. Don also owned a home in Kimberling City, Missouri. Sometime before the accident at issue, Don asked Forbes to assist him in loading a shower unit into a pickup truck owned by Lenise for transport to the Kimberling City home. While Forbes was driving the truck transporting the shower unit to Kimberling City on March 14, 2000, along highway 160 at about 60 to 65 miles per hour, the shower unit blew out of the back of the truck. Wilson was injured as a result of the shower unit leaving the bed of the pickup truck operated by Forbes and striking the pickup in which Wilson was riding.

Wilson and Kathy filed a civil lawsuit against Don, Lenise, and Forbes, in Christian County on or about July 24, 2001 ("underlying action"). Paragraph twelve of the petition in that action provided:

Plaintiff Wilson Murley's injuries and damages resulted from the failure of Defendant Nicholas R. Forbes to drive his vehicle in a careful and prudent manner and to exercise the highest degree of care in operation of his vehicle and his conduct was therefore negligent, careless and reckless immediately prior to, at the time of, the accident in question in the following respects, to wit:

A. Defendant Nicholas R. Forbes operated the motor vehicle at an excessive speed;

B. Defendant Nicholas R. Forbes failed to secure [the shower unit] within his vehicle in such a fashion as to prevent [the shower unit] from leaving his vehicle and coming into collision with the vehicle in which Plaintiff Wilson Murley was a passenger and/or with Plaintiff Wilson Murley.

C. Defendant Nicholas R. Forbes failed to operate his vehicle in such a manner as to prevent [the shower unit] from leaving the vehicle he was operating and coming into collision with the vehicle in which Plaintiff Wilson Murley was a passenger and/or with Plaintiff Wilson Murley.

Paragraph 13 of the petition in the underlying action provided:

Each and all of the foregoing acts and/or omissions were negligent and/or careless and reckless as those terms are known in law and each and all of the foregoing acts and/or omissions were the proximate cause of the subject collision and the injuries and damages sustained by Plaintiff Wilson Murley.

Paragraph 20 of the petition in the underlying action provided:

> At the date, time and place of the collision, Defendant Nicholas R. Forbes was acting on behalf and as agent of Defendants Don and Lenise Vespa, and as principals of Defendant Nicholas R. Forbes, Defendants Don and Lenise Vespa are responsible for the injuries and damages sustained by Plaintiff Wilson Murley.

Shelter had issued a homeowners' policy to Don on the residence in Nixa. Shelter had also issued to Don a dwelling policy on the home near Kimberling City, which included a comprehensive personal liability endorsement. Both policies were in effect at the time of the accident on March 14, 2000. The homeowners' policy excluded: "Bodily injury ... arising out of the ownership, maintenance, use or entrustment of ... (b) any land motor vehicle ... owned or operated by or rented or loaned to an insured[.]" The dwelling policy excluded: "Bodily injury ... arising out of the ownership, maintenance, use or negligent entrustment of ... (b) any land motor vehicle ... owned or operated or rented or loaned to an insured[.]" Each policy has a liability limit of $300,000.

Shelter informed Don and Lenise that it was not obligated to provide coverage and that it would not be providing a defense to them in the underlying action. The underlying action was tried to the court. The only uncontroverted facts from that trial presented by the parties to the trial court in this case supporting Murleys' motion for summary judgment as to any of Forbes' actions were from a portion of the Highway Patrol Report and from a portion of Forbes' testimony.[2] In the report, the patrolman, under the section entitled "Probable Contributing Circumstances," checked the boxes "Vehicle Defects" and "Inattention" in reference to the truck Forbes was driving. Forbes testified to the following:

Q: With what did you tie it down?

A: Like a yellow poly-braided rope.

Q: Do you know how big it was?

A: I'd say like 3/8 to 1/2 inch rope.

Q: Was this rope tied to anything other than the pickup bed?

A: No.

Q: So, it was not physically tied onto the shower-stall unit at all, correct?

A: No. There was nothing on the shower/tub to tie it down.

Q: So, it was just sort of looped over the shower stall from one side of the pickup bed to the other, is that correct—

A: —Yes.

Q: Did the pickup bed—or did the shower-stall unit, I mean, come flush to the pickup bed or the cab unit?

A: No. It was—well, I mean, I guess it was sticking over the side of the bed for

2. In support of these specifically alleged, uncontroverted facts, as required by Rule 74.04(c)(2), Shelter attached what appears to be an entire transcript of the trial of the underlying action as an exhibit to its statement of additional uncontroverted facts in its response to the Murleys' motion for summary judgment. However, no other uncontroverted facts as to any of Forbes' actions based upon the evidence adduced at that trial were alleged or admitted by any party in their statements of uncontroverted facts. Likewise, there were no allegations as an uncontroverted fact that this exhibit was in fact a true and correct copy of the transcript of the entire trial of the underlying action. Because Rule 74.04 requires a statement of uncontroverted facts to "state with particularity in separately numbered paragraphs each material fact as to which [the respective party] claims there is no genuine issue," we can only conclude that any other matters contained in the apparent trial transcript are not material.

All references to rules are to Missouri Court Rules (2007).

probably a foot or so, and it was probably a foot from the bed—from the cab of the truck so . . .

Q: So, it could slide forward or backward, correct—

A. —Yes.

Q: And, the effect of that would be to take off the tightness that was on the rope, correct?

A: Yes.

A final judgment in the underlying action, without any findings of fact, was entered on December 3, 2004, in favor of Wilson in the amount of $800,000 and in favor of Kathy in the amount of $400,000 against Don, Lenise, and Forbes, jointly and severally. This judgment has not been fully paid or satisfied.

On June 30, 2006, the Murleys filed this equitable garnishment action against Shelter, Don, Lenise, and Forbes. Shelter once again informed Don and Lenise that it was not obligated to provide coverage for the March 14, 2000 incident and that it would not be providing a defense to them in this subsequent action. The Murleys filed a motion for summary judgment which the trial court sustained. The trial court then entered judgment against Shelter in the amount of $830,561.57, representing the liability policy limits of $300,000 on each policy, and $230,561.57 in interest on the $1,200,000 judgment in the underlying action, less a credit of $100,000 for the receipt by the Murleys' of the proceeds from the Vespas' auto liability insurance policy. These appeals timely followed and have been consolidated for consideration and disposition by prior order of this court.

### *Standard of Review*

Our review of a summary judgment is "essentially *de novo.*" *ITT Commercial Fin. Corp. v. Mid–America Marine Sup-* *ply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

> The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*Id.* (internal citations omitted).

### *Discussion*

In appeal No. 28493, Shelter raises three points challenging the propriety of the trial court's grant of summary judgment in favor of the Murleys. In its first point, Shelter contends that the Murleys "were not entitled to judgment as a matter of law, in that the undisputed material facts establish [Wilson's] injuries arose out of the operation and use of an automobile and, as such, the unambiguous automobile exclusions contained in the Homeowners and Dwelling policies preclude coverage." In its second point, Shelter likewise challenges the propriety of the grant of summary judgment in favor of the Murleys as an error of law, "in that the auto exclusion applies to preclude coverage because the bodily injury cannot be separated from the use of the automobile in this case." Because these points are so closely related, we will consider them together.

"A defense based on an exclusion to an insurance policy is an affirmative defense, and the burden to establish the exclusion is on the insurer". *Century Fire Sprinklers, Inc. v. CNA/Transp. Ins. Co.*, 23 S.W.3d 874, 879 (Mo.App.2000). However, in the context of a motion for summary judgment, Rule 74.04(c) obligates the

movant to allege uncontroverted facts which negate at least one element of a properly pleaded affirmative defense, even though the burden of proving that defense is upon the non-moving party, because "at this stage of the proceedings 'it is irrelevant what the non-[moving party] has or has not said or done.'" *Taggart v. Maryland Cas. Co.*, 242 S.W.3d 755, 758–59 (Mo.App. W.D.2008) (*quoting ITT Commercial Fin. Corp.*, 854 S.W.2d at 381).

Shelter contends that "[A]ll of the negligence—including the discrete subparts alleged and proved [3]—is attributable to the use of the vehicle" and is, therefore, excluded from coverage under the policies. As such Shelter essentially argues that the Murleys have failed to set forth any uncontroverted facts which negate an element of Shelter's affirmative defense that Forbes' actions are excluded from coverage under the policies. The Murleys impliedly concede that Forbes' failure to "*drive his vehicle in a careful and prudent manner* and to exercise the highest degree of care *in operation of his vehicle* [;]" that "he *operated the motor vehicle* at an excessive speed . . .;" and that he "failed to *operate his vehicle* in such a manner as to prevent [the shower unit] from leaving the vehicle he was operating and coming into collision with the vehicle in which Plaintiff Wilson Murley was a passenger and/or with Plaintiff Wilson Murley[,]" arise out of the use of a land motor vehicle and are excluded from coverage under both policies. (Emphasis added.).

However, the Murleys contend that the act of Forbes, as pleaded in sub-paragraph B of paragraph twelve in the petition and proven at trial in the underlying action, in failing "to secure [the shower unit] within his vehicle in such a fashion as to prevent [the shower unit] from leaving his vehicle and coming into collision with the vehicle in which Plaintiff Wilson Murley was a passenger and/or with Plaintiff Wilson Murley" is not excluded from coverage under the policies. The Murleys argue that "the negligent failure to secure a load in a vehicle properly does not constitute vehicle 'use' within the meaning of an automobile exclusion when that negligence is an independent proximate cause of an injury." "It is broadly accepted that where an insured risk and an excluded risk constitute concurrent proximate causes of an accident, a liability insurer is liable as long as one of the causes is covered by the policy." *Bowan ex rel. Bowan v. General Sec. Indemn. Co. of Arizona*, 174 S.W.3d 1, 5 (Mo.App.2005) (*citing Braxton v. United States Fire Ins. Co.*, 651 S.W.2d 616, 619 (Mo.App.1983)). The Murleys assert that the failure to secure the object in the truck, whether or not the truck was being operated, was the proximate cause of Wilson's injuries and as such was an independent and concurrent act of negligence separate and apart from other negligent acts arising out of the use of the truck.

Thus, the issue for us then, as framed by the parties, is whether Forbes' negligent

---

**3.** We observe that the combination of the absence of the entire transcript of the trial of the underlying action, *see* note 2 *infra*, and the lack of any findings in the judgment of the underlying action, would otherwise preclude us from determining the factual basis for that judgment given that there were three alternate grounds of negligence alleged in the petition. However, Shelter in its brief as quoted from page 17 and also reiterated on page 21, concedes that the evidence developed at the trial of the underlying action supported all three of the allegations of negligence as pleaded in the petition in the underlying action. Thus, even though the record does not support a determination by us as to the factual basis for the judgment in the underlying action, we may rely upon Shelter's concession that the factual basis was in accordance with the allegations in the petition as though it was in fact supported by the record. *Keller v. Keller*, 224 S.W.3d 73, 77 n. 2 (Mo.App.2007).

act in failing to secure the load within his vehicle in such a fashion as to prevent the load from leaving his vehicle and coming into collision with Wilson is use of a vehicle as described in the exclusion and, therefore, excluded from coverage by the policy, or is it a negligent act independent of the use of a vehicle and, therefore, not excluded from coverage?

The parties argue that the application of the use exclusion here is governed by one of two broad categories of cases. Shelter claims that the failure to properly secure a load in a vehicle is a negligence claim which necessarily implicates the use of a vehicle, citing for support *American States Ins. Co. v. Porterfield*, 844 S.W.2d 13 (Mo. App.1992); *Shelter Mut. Ins. Co. v. Politte*, 663 S.W.2d 777 (Mo.App.1983); and *American Family v. Co Fat Le*, 439 F.3d 436 (8th Cir.2006).

On the other hand, the Murleys claim that the failure to properly secure a load in a vehicle is independent of, or divisible from, the use of a vehicle, citing for their support *Bowan*, 174 S.W.3d 1; *Sexton v. Omaha Prop. & Cas. Ins. Co.*, 231 S.W.3d 844 (Mo.App.2007); *Columbia Mut. Ins. Co. v. Neal*, 992 S.W.2d 204 (Mo.App.1999); *Centermark Prop., Inc. v. Home Indem. Co.*, 897 S.W.2d 98 (Mo.App.1995); *Steelman v. Holford*, 765 S.W.2d 372 (Mo.App. 1989); and *Cawthon v. State Farm Fire & Cas. Co.*, 965 F.Supp. 1262 (W.D.Mo.1997).

Shelter primarily relies upon *Porterfield*, while the Murleys primarily rely upon *Bowan*.

In *Porterfield*, a family was injured when a trailer came unhitched from a truck driven by a contractor's employee and hit the family's car. *Porterfield*, 844 S.W.2d at 13–14. The family sued, claiming that the contractor negligently supervised its employee in the proper method of hitching the trailer to the truck. *Id.* at 14, 15. The contractor's insurance carrier

sought a declaration that the automobile exclusion of its general commercial liability policy precluded its liability. *Id.* at 14. The trial court ruled for the contractor, and the Court of Appeals affirmed. Citing *Politte* and other cases, it noted that Missouri and other jurisdictions had "held that acts such as negligent entrustment, negligent hiring, negligent supervision and training are merely incidental to the ownership, operation or use of the vehicles involved in the accident" and therefore not covered by insurance under similar automobile exclusions. *Id.* at 15. The claims were triggered only once injury occurred as a result of an accident and that the injury arose out of the use of the vehicle. *Id.* at 15–16. Thus, the Western District concluded, "the injuries arose out of the use of the truck and not from negligent supervision," so no coverage existed. *Id.* at 16.

On the other hand, in *Bowan*, a non-emergency transportation company, EMT, regularly transported Bowan, who was physically and mentally disabled, to and from her place of work. *Bowan*, 174 S.W.3d at 3. Bowan was a passenger in EMT's van when it was involved in an accident with a pickup truck. *Id.* At the time of the accident, Bowan was not wearing a seatbelt and sustained severe injuries. *Id.* Bowan sued and obtained a judgment against EMT on the basis that EMT's driver was negligent in the operation of the van and that EMT's employee was negligent in failing to determine that Bowan was not wearing a seatbelt before the collision. *Id.* Bowan filed an equitable garnishment action against EMT's commercial general liability insurer ("CGL insurer") claiming coverage. *Id.* at 4. The trial court entered judgment in favor of Bowan and against the CGL Insurer. On appeal, the CGL insurer claimed there was no coverage because of the auto exclusion which provided that the policy did not apply to " '[b]odily injury' or 'property

damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and 'loading and unloading.'" *Id.* at 5. The Eastern District of our court said:

> [E]ven if Driver had not operated the van negligently by violating the traffic signal and it was involved in an accident when the vehicle was not in operation, he still could have been liable for negligence for the failure to "make certain" Bowan was wearing her seatbelt. Thus, the failure to properly secure Bowan was an independent and distinct act of negligence that did not necessarily involve operation of the vehicle.

*Id.* at 6.

> Therefore, there existed an independent and distinct act of negligence (the failure to properly secure Bowan) that was a cause of Bowan's injuries and was not excluded under the policy. Where an insured risk and an excluded risk constitute concurrent proximate causes of an accident, a liability insurer is liable as long as one of the causes is covered by the policy.

*Id.* at 7.

Here, the Murleys cite *Bowan* as the "central Missouri decision" that establishes that: "the negligent failure to secure a load in a vehicle properly does not constitute vehicle 'use' within the meaning of an automobile exclusion when that negligence is an independent proximate cause of an injury." The flaw in this proposition is that it equates the duty owed to a physically and mentally disabled person to make certain that person is properly secured immediately upon being loaded into a vehicle with the duty owed to a motorist in another vehicle on the highway to make certain that an item of personal property in a vehicle is properly secured so that it does not leave that vehicle and injure that

motorist in the other vehicle. These duties are not the same.

In the former, Bowan was immediately exposed to the risk of injury and could have been injured while merely sitting in the van without being secured, regardless of whether or not the van was being operated or otherwise used. In the case at bar, however, there is no evidence in the record before us that Wilson, while traveling as a passenger in a vehicle on highway 160, could have been injured by Forbes' mere failure to properly secure the shower unit in the pickup truck while it was located at Don's residence in Nixa. This failure to secure the load necessarily had to be coupled with, and was, therefore, dependent upon the operation of the truck in order to transport the shower unit, thereby putting the shower unit in motion and in proximity to Wilson. Thus, on the record before us, the failure to secure the load within the truck in such a fashion as to prevent it from leaving the vehicle was merely in preparation for and incidental to the use and operation of the truck. *Porterfield,* 844 S.W.2d at 15.

The Murleys' specific claim of negligence implicitly acknowledges the dependent relationship between the failure to properly secure the shower unit and the use of the truck. In their petition they describe Forbes' negligence as failing "to secure [the shower unit] *within his vehicle* in such a fashion as to prevent [the shower unit] from *leaving his vehicle.*" (Emphasis added.). The only reason to secure the shower unit *within the pickup truck* is to maintain the truck's mobility, i.e., its ability to be used to transport the shower unit. When the shower unit was placed in the truck by Don and Forbes at Don's residence in Nixa, it could have been adequately secured by tying the ends of the rope put over the shower unit to stakes driven in the ground. However, that would have precluded the use of the truck

to transport the shower unit. Likewise, when located at Don's residence in Nixa there were many ways the shower unit could have been secured without using the truck at all much less without being secured in such a fashion as to prevent it from *leaving* the truck. Once again, it is only in the context of transporting the shower unit by using the truck that the requirement to secure it in such a fashion makes any sense.

■ Conversely, there is no evidence in the record before us that, while the truck was sitting stationary at the residence in Nixa and not otherwise being used, the manner in which the shower unit was situated in the bed of the pickup truck or the manner in which it was or was not secured to the pickup truck posed any risk of injury to anyone. It was only at the time that the shower unit was placed in motion by the operation of the truck in transporting it to Kimberling City that the manner in which it was secured to the vehicle posed a risk of injury to Wilson, and then only when, once again, the use of the truck to transport it brought it in proximity to Wilson. Thus, the act of negligently failing to secure the load within the pickup truck is dependent upon, not independent of, the use of the truck to transport the load. *Porterfield,* 844 S.W.2d at 15; *Politte,* 663 S.W.2d at 779; *Co Fat Le,* 439 F.3d 436, 440. *Accord Newton v. Nicholas,* 20 Kan. App.2d 335, 887 P.2d 1158, 1164–1165 (1995); *Columbia Mut. Cas. Ins. Co. v. Coger,* 35 Ark.App. 85, 88, 811 S.W.2d 345, 347 (Ark.App.1991); *State Farm Mut. Auto. Ins. Co. v. Roberts,* 166 Vt. 452, 463, 697 A.2d 667, 673 (Vt.1997); *Nationwide Mut. Ins. Co. v. Great West Cas. Co.,* 102 F.3d 965, 967 (C.A.8 (Neb.) 1996).

The co-dependent relationship between securing goods to a vehicle and operating that vehicle to transport those goods has been acknowledged by our legislature by the enactment of section 307.010,[4] which provides:

1. All motor vehicles, and every trailer and semitrailer operating upon the public highways of this state and carrying goods or material or farm products which may reasonably be expected to become dislodged and fall from the vehicle, trailer or semitrailer as a result of wind pressure or air pressure and/or by the movement of the vehicle, trailer or semitrailer shall have a protective cover or be sufficiently secured so that no portion of such goods or material can become dislodged and fall from the vehicle, trailer or semitrailer while being transported or carried.

2. Operation of a motor vehicle, trailer or semitrailer in violation of this section shall be a class C misdemeanor, and any person convicted thereof shall be punished as provided by law.

The primary purpose for which a pickup truck is designed, acquired, and used is for transporting goods in its bed. Thus, transporting goods is an inherent function of a pickup truck. Our legislature has recognized that when a vehicle, such as a pickup truck, is operated and thereby used for that inherent function, injury to third parties and property can result from "wind pressure or air pressure and/or by the movement of the vehicle" if the goods are not adequately secured to the vehicle "while being transported or carried." Indeed, from the record before us, that is precisely what happened in this case.

The other cases cited by the Murleys do not lend them any assistance. In each case, the negligent act did not depend or rely upon the use of a vehicle to produce the injury, as is the case here. *Sexton,* 231 S.W.3d at 849–50 (throwing beer cans in front of a vehicle was not an act inherently

---

4. All references to statutes are to RSMo 2000.

dependent upon the use of a vehicle); *Columbia Mut. Ins. Co. v. Neal*, 992 S.W.2d 204, 208–09 (Mo.App.1999) (negligent failure to supervise a minor child was not dependent upon use of vehicle to cause injury to child. "[I]t is the obligation and ability to supervise and control, not the instrumentality that caused the harm, that is decisive"); *Centermark Prop., Inc. v. Home Indem. Co.*, 897 S.W.2d 98, 101 (Mo. App.1995) (failure to comply with set procedures for apprehending, subduing, and controlling third parties and persons suspected of criminal activity and failing to have proper and adequate hiring practices and training policies and programs for its security officers is not dependent upon use of vehicle to cause injury); *Steelman v. Holford*, 765 S.W.2d 372, 378 (Mo.App. 1989) (wrongful discharge of firearm was not dependent upon use of vehicle to cause injury, and the fact that the discharge occurred in a vehicle provided no causal connection between the injury and the use of the vehicle); and *Cawthon v. State Farm Fire & Cas. Co.*, 965 F.Supp. 1262, 1268 (W.D.Mo.1997) (injury from catapulting tree limb "would not have occurred without the negligently placed ropes regardless of whether a truck, a horse, or a tractor had been used. The fact that the result would have been the same regardless of the source of the power shows remoteness in terms of proximate cause and independence for purposes of concurrent causation.").

Because Forbes' negligence in failing to secure the shower unit within the truck in such a fashion as to prevent it from leaving the truck is incidental to and dependent upon the use of the truck in transporting the shower unit, the Murleys, on the record before the trial court and us on their motion for summary judgment, have failed to establish any uncontroverted facts negating Shelter's affirmative defense that its liability for the Murleys' injuries is excluded by the vehicle exclusions in the policies. Shelter's points one and two are granted, requiring a reversal of the trial court's judgment granting the Murleys' motion for summary judgment.

Due to the reversal required by our disposition of Shelter's points one and two in its appeal, Shelter's third point and the Murleys' three points in their appeal, No. 28553, challenging the sufficiency of the amount of the interest awarded on that judgment are now moot and need not be addressed.

### Decision

The trial court's judgment granting the Murleys' motion for summary judgment is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

RAHMEYER, J., and BATES, J., concur.